**Lonnie Joe PENNINGTON, Plaintiff,**

v.

**Robert HOBSON, Jack Myers, and Mark Harrell, Individually and as Officers of the Richmond Police Department, Defendants.**

No. IP 87–1021–C.

United States District Court,
S.D. Indiana,
Indianapolis Division.

Aug. 4, 1989.

Michael K. Sutherlin, Indianapolis, Ind., for plaintiff.

Randall C. Helman, Hume Smith Geddes & Green, Indianapolis, Ind., for defendants.

## ENTRY

McKINNEY, District Judge.

In this action, plaintiff claims that defendants deprived him of his constitutional rights by arresting him for possession of a controlled substance without probable cause and by detaining him during and after a laboratory analysis of the substance found in his possession. He seeks compensatory and punitive damages for the alleged deprivation under 42 U.S.C. section 1983.

Currently before the court is a Motion for Summary Judgment filed by defendants. For the reasons discussed in this memorandum, this court GRANTS summary judgment in favor of the individual defendants, but DENIES summary judgment as against the defendant City of Richmond.

## MEMORANDUM

### I. BACKGROUND

A small packet of white powder is a suspicious-looking item, as plaintiff Lonnie Joe Pennington learned in late 1985. On December 15 of that year, Officers Hobson and Harrell of the Richmond Police Department arrested plaintiff for public intoxication and disorderly conduct. After the arrest, the officers searched plaintiff for weapons, and discovered a packet of white powder in his vest pocket. The officers confiscated the packet, detained plaintiff in the local jail on public intoxication and disorderly conduct charges, and proceeded to the police lab room to conduct a field test on the confiscated powder.

Officer Hobson performed the field test, using the drug identification kit provided by the Richmond Police Department—a DIK–12 kit manufactured by the G. Frederick Smith Chemical Company. According to Hobson, the field test showed that the white powder was cocaine. Acting on this conclusion, Hobson initiated the procedures necessary to have the powder taken to the Indiana State Police Laboratory for definitive testing.

The next day, December 16, plaintiff appeared in the Wayne County Superior Court for arraignment on the public intoxication and disorderly conduct charges. Plaintiff pleaded guilty to the disorderly conduct charge, and, pursuant to the prosecutor's recommendation, the court sentenced plaintiff to two days of actual jail time. The prosecutor dropped the public intoxication charge, noting that "there appears to be probably a felony charge that's also going to be filed in relationship to this incident." (Plaintiff's Exhibit D, Transcript of Arraignment, at 5). Assuming plaintiff began serving his jail time on the 16th, he was due to be released on December 18.

On December 18, Officer Hobson swore out a probable cause affidavit, stating that the drug identification field test had indicated that the powder he had confiscated from plaintiff was cocaine. On the 19th, the Wayne Superior Court considered the affidavit and determined that there was probable cause to arrest and detain plaintiff for possession of a narcotic drug. Unable to post the $5,000 bail, plaintiff continued his detention in the local jail.

During all of these proceedings, the confiscated powder sat in the evidence room at

the Richmond Police Department, awaiting transport to the State Police Laboratory in Indianapolis. Lieutenant Myers, the Richmond police officer responsible for transporting controlled substances to Indianapolis for testing, made a practice of transporting substances about once a month. Apparently, Myers had made a substance transport trip to the Indianapolis Laboratory just prior to plaintiff's arrest, for he waited more than a month before he took plaintiff's powder to the lab, eventually taking it on January 23, 1986. Myers returned to Indianapolis to pick up the lab test result on February 20, 1986. The lab test identified plaintiff's powder as aspirin.

On the day Myers picked up the exculpatory lab result, plaintiff had been detained on the possession charge for about two months. Myers stated in his deposition that he sent the result to the prosecutor via the Records Clerk on the day he picked up the result, or on the next day (Defendant's Memorandum in Support of Summary Judgment at 4, citing Myers Dep. at 28–29). The instant record does not indicate whether the prosecutor ever received the result. At any rate, another month elapsed before any of the Richmond officials took action to release plaintiff from jail. Plaintiff was finally released on March 21, 1986, when the Wayne Superior Court dismissed the possession charge.

Plaintiff now sues Lieutenant Myers and Officers Hobson and Harrell in their individual capacities, claiming that they violated his Fourth, Fifth and Fourteenth Amendment rights. More specifically, he alleges that (1) defendants arrested him for possession of a narcotic drug without probable cause; (2) the wrongful arrest resulted in his unlawful detention for three months [1]; (3) defendants Hobson and Harrell either lied to the court and prosecutor or were incompetent in conducting a credible field test; and (4) defendants Hobson and Harrell lost the field test result.

In addition to naming defendants in their individual capacities, plaintiff names them "as officers of the Richmond Police Department", in an apparent attempt to state a claim against the City of Richmond. Defendants question whether plaintiff has actually named the city as a defendant, and they have filed a Motion to Strike all of plaintiff's contentions pertaining to municipal liability. In addition, they argue that even if plaintiff has succeeded in naming the city as a defendant, the claim should be dismissed for failure to allege an unconstitutional municipal custom or policy.

With regard to the individual capacity claims, defendants dispute plaintiff's allegation that he was arrested without probable cause. Further, they assert that because they are police officers they are immune from personal liability for plaintiff's alleged damages.

## II. DISCUSSION

### A. *Summary Judgment Standard*

To rule on defendants' Motion for Summary Judgment, this court must identify the elements of plaintiff's action and examine the evidence relevant to each element. If, after examining the evidence, the court determines that there is a complete failure of proof on an essential element of plaintiff's case, the court must grant summary judgment in favor of defendants. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986).

Further, the court must assess the evidence in the record as a whole and determine whether there is a genuine dispute as to any fact which is material to the outcome of the case. In other words, the court's role in the Motion for Summary Judgment is to decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251–52, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986).

---

1. The complaint states that plaintiff was wrongfully detained for four months (complaint, par. 10). This allegation was apparently an error, for plaintiff was detained for three months, from December 15, 1985 until March 21, 1986. Plaintiff has corrected his error, and now asserts that the unlawful detention lasted three months (Plaintiff's Contentions, par. 7).

## B. *Individual Capacity Claims*

To prevail on his individual capacity claims, plaintiff must establish that (1) he held a constitutionally protected right; (2) he was deprived of that right; (3) the defendants caused the deprivation; and (4) the defendants were acting under color of state law. *Donald v. Polk County,* 836 F.2d 376, 379 (7th Cir.1988). Plaintiff has properly alleged each element. He has alleged that defendants deprived him of his Fourth Amendment right to be free from arrest and detention without probable cause[2] (made applicable to the states through the Fourteenth Amendment), and that they deprived him of liberty without due process of law in violation of the Fourteenth Amendment.[3] Further, he has alleged that defendants were acting under color of state law—he claims that defendants were acting pursuant to their authority as police officers at all times relevant to the complaint.

### 1. Fourth Amendment probable cause claim

Plaintiff's Fourth Amendment claim is a challenge to his arrest. Plaintiff does not expressly limit the claim to defendants Hobson and Harrell, but his complaint contains no allegations which connect defendant Myers with the arrest. As such, plaintiff states no Fourth Amendment claim against defendant Myers.

Defendants Hobson and Harrell assert the defense of qualified immunity. Qualified immunity is a doctrine which shields public officials from personal liability in section 1983 actions; it is designed to ensure that the officials will not be unduly pinioned in the performance of their duties by the fear of personal liability. *Anderson v. Creighton,* 483 U.S. 635, 638, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523 (1987); *see also Owen v. City of Independence,* 445 U.S. 622, 653, 100 S.Ct. 1398, 1416, 63 L.Ed.2d 673 (1980). When qualified immunity applies, the protection from damages liability is plenary, but immunity does not apply in every case. Only those public officials who can show that their conduct was not violative of any of the plaintiff's clearly established rights are entitled to qualified immunity. *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982).

The determination of whether individual defendants are immune from liability is a decision for the court, rather than for a jury. *Hughes v. Meyer,* 880 F.2d 967, 971 (7th Cir.1989). Further, because the burden of defending a suit disrupts public officials' ability to perform their duties, the court should resolve the immunity issue at the earliest possible stage of a litigation. *Anderson,* 483 U.S. at 646, n. 6, 107 S.Ct. at 3042, n. 6. If the court determines that the defendants are entitled to immunity, any further examination of the merits of the claim is unnecessary and inappropriate. *See Benson v. Allphin,* 786 F.2d 268, 279 n. 26 (7th Cir.1986).

Qualified immunity is a fact-sensitive issue, and it is determined by an objective, rather than a subjective standard: immunity turns on whether a reasonable official in the defendant's position at the time the

---

**2.** The parties have variously described plaintiff's Fourth Amendment claim as a challenge to the arrest on the possession charge, and as a challenge to the charge itself (*see* Complaint, par. 1, and Defendant's Memorandum in Support of Summary Judgment, at 6). This fluctuation in terminology is understandable. Plaintiff had not been released from his disorderly conduct sentence at the time Officer Hobson prepared the probable cause affidavit on the possession charge, so he had no interim period of freedom between the expiration of the disorderly conduct sentence and the pretrial detention for possession. Notwithstanding the lack of a period of freedom, the court will treat plaintiff's claim as a challenge to the probable cause for the arrest. Had plaintiff intended to challenge the actual charge, he would have had to implicate the local prosecutor in some way, since in Indiana only prosecutors may bring charges. *See* Ind.Code 35–34–1–1. Nothing in the complaint implicates the prosecutor (presumably due to the absolute immunity bar), so the court ignores the references to "charges" with respect to the Fourth Amendment claim.

**3.** Plaintiff consistently states that defendants violated his Fourth, Fifth and Fourteenth Amendment rights. This court is unable to locate an independent Fifth Amendment claim in the record, and thus consolidates plaintiff's Fifth and Fourteenth Amendments theories into a single Fourteenth Amendment claim.

cause of action arose would have known that the challenged conduct violated a clearly established right. *Malley v. Briggs*, 475 U.S. 335, 345, 106 S.Ct. 1092, 1098, 89 L.Ed.2d 271 (1986). Further, the right allegedly violated must be defined with specificity—a plaintiff cannot defeat the defense of immunity by asserting that the defendants violated some broad constitutional precept.

As applied to the case at bar, these principles indicate that to decide the immunity issue, this court must determine whether a reasonable police officer confronted with the specific facts available at the time of the arrest would have known that the arrest was violative of plaintiff's Fourth Amendment right. *See Malley v. Briggs*, 475 U.S. 335, 345, 106 S.Ct. 1092, 1098, 89 L.Ed.2d 271 (1986); *see generally Schertz v. Waupaca County*, 875 F.2d 578, 583 (7th Cir.1989).

Plaintiff presents three separate allegations, each of which, he maintains, are probative of his position that defendants lacked probable cause to arrest him. His first allegation is an attack on the reliability of the DIK–12 field test kit defendant Hobson used to analyze the confiscated powder. Plaintiff contends that due to the age of the reagents in the kit, Hobson's decision to prepare a probable cause affidavit was unjustified. In support of this contention, plaintiff presents two affidavits. The first is that of a chemist employed by the manufacturer of the DIK–12 kit, in which the chemist states that the manufacturer stopped selling the kit in 1978, and stopped selling replacement reagents for the kit in 1980 (Mellum Aff. par. 3).

Plaintiff argues that because the manufacturer stopped selling reagents in 1980, the reagents in Richmond DIK–12 kit had to have been at least five years old in 1985 when defendant Hobson used them. While this court recognizes the possibility that the Richmond Police Department obtained fresh reagents from a different source, plaintiff's argument does raise an inference that the reagents had been on the shelf in Richmond for at least five years before defendant Hobson used them to test plaintiff's powder.

■ This inference is relevant only if there is some indication that the reagents became less potent over time. On this question, plaintiff himself presents conflicting evidence. He proffers the chemist's affidavit, which contains the statement, "[u]nless the reagents used in the testing of cocaine were somehow contaminated, they would have an indefinite shelf life" (Mellum Aff. par. 6); and he proffers an affidavit from a retired sergeant of the Indianapolis Police Department, who states, "[a] field test kit which was no longer sold and [r]eagents no longer available after 1980 would have serious question of reliability" (Fisher Aff. par. 9).[4]

■ Although it is somewhat unusual for a plaintiff to present testimony on both sides of a question, the conflicting affidavits demonstrate that there is a factual issue as to the reliability of the DIK–12 kit used in Richmond in 1985. Accordingly, this court must determine whether the factual issue is material to defendants' assertion of qualified immunity, i.e., whether, assuming the reagents were at least five years old, a reasonable police officer would have accepted the reagent test result and used it as the basis of a probable cause affidavit.

Plaintiff has presented no evidence tending to show that a reasonable police officer would or should have been aware of either the age of the reagents or the question as to their reliability. He has not shown that there was any label or other notice in the DIK–12 kit which would inform kit users that the reagents might become less reliable over time. If, as plaintiff's evidence indicates, a professional chemist would not question the reliability of uncontaminated five year old reagents, a reasonable police

---

**4.** Affiant Fisher also states that the practice followed by defendant Hobson did not conform to "customary police practice at the time." (Fisher Aff. par. 8). Plaintiff argues that this alleged deviation from accepted practice negates the defense of qualified immunity. The argument is erroneous. A police officer who fails to follow accepted procedure is still immune from damages unless the failure amounts to a violation of clearly established law.

officer would have no reason to doubt the accuracy of a test obtained from such reagents. Moreover, the court has discovered no case law available in 1985 that impugned the use of a DIK–12 test or any similar drug identification field test, or that indicated that use of field test results as the basis of probable cause affidavits was unconstitutional. As such, the court finds that there was no clearly established right in 1985 precluding the use of field test results in probable cause affidavits. Accordingly, plaintiff's first challenge to defendant's immunity fails.

■ In his second challenge to immunity, plaintiff alleges that defendant Hobson failed to follow the prescribed field test method or, in the alternative, that the prescribed method was defective. He maintains that defendant Hobson should have tested the powder for aspirin content, in addition to testing it for cocaine. In response, Hobson and Harrell state that Hobson performed a standard test in accordance with proper procedures (Hobson Aff. par. 4, 5, and 7; Defendants' Memorandum in Support of Summary Judgment at 2, citing Harrell Dep. at 8–9).

Plaintiff offers nothing to counter defendants' testimony. He presents nothing which identifies the specific test method defendant Hobson used or which indicates that Hobson did not test the powder for aspirin content. Further, he presents no evidence which would indicate that the alleged failure to test for aspirin content was improper. Instead, he makes a conclusory allegation that a reasonable officer would have used a test method that would have shown the powder was aspirin (Plaintiff's Response to Defendant's Motion for Summary Judgment, at 6). Such a conclusory allegation is insufficient to create an issue of fact as to the test method actually used. *Powers v. Dole,* 782 F.2d 689, 695 (7th Cir.1986). Absent any evidence that defendant Hobson used a certain test method in preference to another, or that he made some mistake in performing the test, or that the DIK–12 prescribed test methods were defective, this court is left with the question presented in plaintiff's first chal-

lenge—whether the mere use of the test kit violated plaintiff's clearly established rights. The court finds that the use of the test kit was not constitutionally invalid in 1985, and thus finds that plaintiff's second probable cause challenge does not defeat the defense of immunity.

Plaintiff's third challenge to defendants' decision to submit a probable cause affidavit rests on his contention that defendants deceived the state court about the test result. He maintains that defendants might not have performed the test at all, or that they might have fabricated the result (Plaintiff's Response to Defendants' Motion for Summary Judgment, at 5). Such a material misrepresentation of the test result, plaintiff argues, would render the probable cause affidavit invalid and would expose Hobson and Harrell to section 1983 liability.

■ Plaintiff is correct that a material misrepresentation in a probable cause affidavit is actionable under section 1983. *See Schertz v. Waupaca County,* 875 F.2d 578, 582 (7th Cir.1989). And, qualified immunity does not protect a police officer who engages in such deception: a police officer who knowingly or recklessly submits an affidavit containing false statements concerning an arrestee violates the arrestee's clearly established Fourth Amendment rights. *Olson v. Tyler,* 771 F.2d 277, 281 (7th Cir.1985). The allegation of deception alone, however, does not negate the application of qualified immunity on summary judgment. This court must determine whether plaintiff has presented sufficient evidence to create a genuine issue of fact concerning the alleged deception. If the allegation is wholly unsupported, the defense of qualified immunity remains intact.

■ Defendants Hobson and Harrell reject even the suggestion of deception, insisting that the statements in the probable cause affidavit were candid and accurate. In their answers to plaintiff's interrogatories, they stand by their account of the test. (Hobson Answers to Interrogatories, par. 7; Harrell Answers to Interrogatories, par. 7). Plaintiff offers no facts which refute defendants' position, nor does he

present anything which brings defendants' credibility into question. Apparently, he uncovered nothing during discovery which would allow an inference that defendants misrepresented the test result. Lacking any relevant evidence, he resorts to a speculation that defendants might have been disingenuous in performing the field test or in presenting the results to the state court. His conjecture is to no avail. Speculation cannot defeat summary judgment when, as here, the record contains nothing from which a reasonable jury could find that the speculated fact exists. *See Boruski v. United States,* 803 F.2d 1421, 1428 (7th Cir.1986).[5]

In summary, there is a complete failure of proof on plaintiff's second two challenges to probable cause: plaintiff has presented nothing which would support either the inference that defendant Hobson misused the test kit or the inference that defendants Hobson and Harrell deceived the state court as to the test results. As to the first challenge, the court has found that the age of the reagents in the kit would not cause a reasonable police officer to question the validity of the test result. Having determined that plaintiff's challenges to probable cause do not negate qualified immunity, the court turns to an examination of the remaining facts to decide whether the record supports defendants' assertion of immunity.

■■■ Defendants are immune from plaintiff's claim unless a reasonable police officer would have known that there was no probable cause to arrest plaintiff. A probable cause determination cannot be assailed by hindsight; there is probable cause for an arrest so long as, under the circumstances at the time, the reasonably trustworthy facts known to the arresting officer are sufficient to warrant a prudent belief that the suspect has committed an offense. *Bergren v. City of Milwaukee,* 811 F.2d 1139, 1142 (7th Cir.1987), citing *Beck v. Ohio,* 379 U.S. 89, 91, 85 S.Ct. 223, 225, 13 L.Ed.2d 142 (1964). In the case at bar, the facts and circumstances known to defendants Hobson and Harrell were (1) plaintiff had been arrested for public intoxication and disorderly conduct; (2) at the time of the arrest, plaintiff had a packet of white powder in his vest pocket; (3) the DIK–12 field test had indicated that the powder was cocaine. In addition, Hobson had used the test kit several times prior to the time he tested plaintiff's powder, and neither Hobson nor Harrell were aware of any time that the field test had produced a false result (Hobson Answers to Interrogatories, par. 5; Harrell Answers to Interrogatories, par. 5).

This court has discovered no case law extant at the time of the arrest which even intimated that a probable cause affidavit based on the facts and circumstances known to Hobson and Harrell would be unconstitutional. There being no contrary indication in the existing law, this court cannot find that defendants' conduct violated any clearly established Fourth Amendment right. Accordingly, the court holds that defendants Hobson and Harrell are immune from liability for plaintiff's Fourth Amendment claim.

### 2. Fourteenth Amendment due process claim

■■ Plaintiff's allegation that his detention was unlawful is an endeavor to state a Fourteenth Amendment claim for deprivation of liberty without due process of law.[6]

---

5. In reaching this conclusion, the court is mindful of the difficulty in presenting proof of deception. Here, however, plaintiff made absolutely no attempt to cite the court to any inconsistencies or ambiguities in defendants' statements which would allow an inference of deception. Nor did plaintiff submit indirect evidence which would have suggested that defendants did not perform the test. The court cannot allow plaintiff to proceed on mere speculation where the record is devoid of proof.

6. Defendants contend that under the doctrine of *Parratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), the availability of state remedies precludes plaintiff's due process claim. This contention would be correct if plaintiff's challenges were limited to the independent actions of the individual defendants. The complaint can be construed, however, as a challenge to the state criminal procedure. So construed, *Parratt* does not bar plaintiff's claim. *See Toney-El v. Franzen,* 777 F.2d 1224, 1227–28 (7th

The analysis of the Fourteenth Amendment claim, like the analysis of the Fourth Amendment claim, begins with an inquiry into whether defendants are qualifiedly immune from liability. And, as before, the immunity issue is fact-sensitive. The facts relevant to the immunity of defendants Hobson and Harrell differ from those relevant to defendant Myers' immunity, so the court will analyze those defendants' immunity separately.

### a. Defendants Hobson and Harrell

After the initial determination of probable cause, defendants Hobson and Harrell had limited involvement in the continued detention of plaintiff. Their immunity turns on whether it was clearly established in 1985 that their post-arrest conduct violated plaintiff's Fourteenth Amendment right.

■■■ In 1985, the Fourteenth Amendment did not require police officers to follow up each arrest with an intensive exploration of the arrestee's claims of innocence. *Baker v. McCollan,* 443 U.S. 137, 145–46, 99 S.Ct. 2689, 2695–96, 61 L.Ed.2d 433 (1979). The law is the same on this issue today. Once probable cause has been established, police officers have no constitutional duty to continue their investigation of the suspect or of the offense. *Schertz v. Waupaca County,* 875 F.2d 578 (7th Cir.1989).

In the case at bar, the state court made a determination that there was probable cause to detain plaintiff on a charge of possession of cocaine. After that determination, defendants had no obligation to continue to investigate plaintiff's claims, or to follow up on the laboratory confirmation of the field test results. Having no obligation to continue their investigation, defendants Hobson and Harrell cannot be said to have violated plaintiff's clearly established due process rights unless their conduct interfered in the ultimate determination of plaintiff's innocence.

■■ Plaintiff does not allege that defendants engaged in any post-arrest conduct constituting active interference with due process. Rather, he alleges only that defendants lost the field test result, apparently contending that the loss was a breach of his due process right. He presents no factual support for his allegation, but defendants do not refute it, so the court will assume that the allegation is true for the purposes of the qualified immunity analysis. Given that assumption, the specific issue for resolution is whether defendants' failure to preserve the test result violated a clearly established due process right to access to evidence.

At the time defendants allegedly lost the test result, the leading case on the loss of evidence was *California v. Trombetta,* 467 U.S. 479, 104 S.Ct. 2528, 81 L.Ed.2d 413 (1984). In *Trombetta,* two criminal defendants challenged their drunken driving convictions on the basis of the state's failure to preserve their breath samples.[7] The Court began its review of their challenge by explaining that the constitutional guarantee of access to evidence requires in general terms that the state deliver exculpatory evidence to the accused. *Trombetta,* 467 U.S. at 485, 104 S.Ct. at 2532. The Court then noted that the question of the state's duty to take affirmative steps to preserve evidence was a matter of first impression. After discussing the relevant precedent, the Court held that the failure to preserve the breath samples was not a constitutional violation, but in doing so, the Court recognized that the Constitution imposes a duty on the state to preserve evidence that might be significant to the suspect's defense. *Id.* at 488, 104 S.Ct. at 2533. Describing the type of evidence which triggers the preservation duty, the Court wrote,

> [the] evidence must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would

Cir.1985); see also the discussion of municipal liability, *infra.*

---

7. Preservation of breath samples is technologically feasible. *Trombetta,* 467 U.S. at 482, 104 S.Ct. at 2530.

be unable to obtain comparable evidence by other reasonably available means. *Id.* at 489, 104 S.Ct. at 2534.

The field test result at issue in the case at bar is arguably within the description of the type of evidence which had to be preserved under *Trombetta.* However, there is a significant difference between the loss of evidence in *Trombetta* and the loss in the case at bar. In *Trombetta,* the police knowingly destroyed the breath samples pursuant to their departmental testing procedures. 467 U.S. at 481–82, 104 S.Ct. at 2530–31. In contrast, defendants Hobson and Harrell did not knowingly destroy the test result—plaintiff alleges only that they lost it. Although defendants may be charged with the knowledge of the teaching of *Trombetta,* such that a knowing destruction of evidence would have been violative of plaintiff's clearly established rights, defendants cannot be charged with the knowledge of any constitutional duty to take affirmative steps to avoid the loss of evidence.[8] Moreover, this court has discovered no cases from which a reasonable police officer could have gleaned that the unintentional loss of a field test result violated any due process right.[9] *Cf. Palmer v. City of Chicago,* 755 F.2d 560, 574–75 (7th Cir.1985) (good faith destruction of investigatory notes in accordance with standard office operating procedure is not a constitutional violation); *U.S. v. Bastanipour,* 697 F.2d 170, 174 (7th Cir.1982) (no constitutional violation if destruction was unwitting and information was available through another source). Accordingly, this court holds that defendants Hobson and Harrell are immune from plaintiff's Fourteenth Amendment challenge to the loss of the field test result.

### b. Defendant Myers

Defendant Myers' actions were more directly related to the continued detention of plaintiff than were the actions of defendants Hobson and Harrell. Myers was responsible for receiving and maintaining property confiscated from suspects, and for transporting confiscated substances to and from Indianapolis for the laboratory testing process. From the time Myers received plaintiff's powder in the police evidence room until the time he picked up the exculpatory lab results, two months elapsed. Another month passed before plaintiff was released from custody. Plaintiff labels the time lapse "dilatory behavior of Myers" and argues that the lapse is "indicative of [Myers'] callous disregard for the constitutional rights of [plaintiff]" (Plaintiff's Response Brief, at 8).

Plaintiff offers no citation for his contention that the two month turnaround time for laboratory testing was constitutionally invalid. Nor does he present a citation to support his position that the one month delay in his release amounted to a due process violation. Absent such support, in order to rule on the qualified immunity defense this court must examine the case law to determine whether plaintiff had a clearly established right either to a more rapid laboratory confirmation of the field test, or to an immediate release upon the discovery of the exculpatory result.

 The assertions of these rights, the right to rapid laboratory confirmation and the right to immediate release, are at root challenges to prolonged pretrial detention. In *Baker v. McCollan,* 443 U.S. 137, 99

---

**8.** In 1988, the Supreme Court held that there is no strict duty to prevent the loss of evidence, writing, "unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law." *Arizona v. Youngblood,* — U.S. —, 109 S.Ct. 333, 337, 102 L.Ed.2d 281 (1988). Because it was decided after the time of plaintiff's detention, ·the *Youngblood* decision has no effect on the qualified immunity issue at bar, except to show that there was no definitive case law of the issue of unintentional loss of evidence.

**9.** Although defendants are immune from liability, the court notes that on the merits plaintiff could not have prevailed on the theory of lost evidence, because the theory is based on negligence and negligent conduct is not an actionable due process violation in section 1983 individual capacity actions. *Daniels v. Williams,* 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986).

S.Ct. 2689, 61 L.Ed.2d 433 (1979), the Court suggested that in certain situations, prolonged pretrial detention after a valid arrest could amount to a due process violation. *Baker*, 443 U.S. at 145, 99 S.Ct. at 2695. Since that suggestion, lower courts have struggled to distinguish between constitutionally valid and constitutionally invalid detentions. The state of the law was unclear at the time plaintiff was in detention, but at least two cases had indicated that continued detention did not violate the due process clause unless the police were aware of exculpatory evidence. *See Powe v. City of Chicago*, 664 F.2d 639, 652 (7th Cir.1981); and *Gay v. Wall*, 761 F.2d 175, 179 (4th Cir.1985). Neither of these cases imposed any affirmative duty on police officers under the Constitution to obtain rapid confirmation of judicial determinations of probable cause. Further, this court has discovered no pre–1986 case that established a right to speedy confirmation of preliminary evidentiary findings.

The lack of relevant case law is not surprising, because the creation of a right to speedy confirmation of a probable cause determination would likely impose a continuing duty of investigation upon police officers. Such a duty would be in derogation of the principle (discussed above) that law enforcement officers have no responsibility under the Constitution to investigate every claim of innocence. *Baker v. McCollan*, 443 U.S. 137, 146, 99 S.Ct. 2689, 2695, 61 L.Ed.2d 433 (1979). According to that principle, defendant Myers had no duty to further investigate the original determination that the powder was cocaine. In addition, under the contemporary case law, he had no duty to use reasonable speed to obtain confirmation of the original determination. Because of the lack of an extant constitutional duty, plaintiff's attack on the two-month delay in procuring the laboratory test result cannot defeat defendant Myers' immunity.

■ The case law leads to a different result with regard to the additional one-month delay in plaintiff's release. In *Powe v. City of Chicago*, 664 F.2d 639 (7th Cir. 1981), the court indicated that a pretrial detainee has a constitutional right to release after it is discovered that he is not the person sought for the crime. *Id.* at 652. And, in *Gay v. Wall*, 761 F.2d 175, 179 (4th Cir.1985), the court held that police officers who continue to detain an individual after they have actual knowledge of his innocence may be liable to the individual under section 1983. *Id.* at 179. Both *Powe* and *Gay* were available in 1985 to put reasonable police officers on notice that the Constitution proscribed intentional deprivations of liberty in the face of clearly exculpatory evidence. Given these cases, the court finds that a reasonable police officer would have known that the continued detention of plaintiff after the receipt of the laboratory test result would amount to a due process violation. Consequently, defendant Myers is not immune from plaintiff's claim for damages for the final month of detention.

■ That defendant Myers is not immune from plaintiff's claim does not end the summary judgment inquiry. He is still entitled to summary judgment in his favor if the undisputed facts show that he was not responsible for the detention. On this issue, plaintiff presents not a single statement or allegation which is probative of any causal connection between defendant Myers' conduct and the continued detention after the receipt of the exculpatory test result. Myers, on the other hand, presents evidence to demonstrate that he fulfilled his responsibility to plaintiff by reporting the test result to the "Records Clerk" the day after he picked it up (Defendant's Memorandum in Support of Summary Judgment, at 4). Plaintiff offers nothing to show that defendant Myers could or should have done anything more to facilitate his release. Rather, plaintiff focuses on the police department's failure to implement procedures which would have avoided the unjustified detention. This focus on departmental procedure is appropriate and forceful as it relates to municipal liability, but it is ineffective with regard to the individual liability of defendant Myers.

The complete failure of proof on the causation element of plaintiff's individual ca-

pacity claim against defendant Myers distinguishes this case from *Murray v. City of Chicago*, 634 F.2d 365 (7th Cir.1980). In *Murray*, two Chicago police officers arrested the plaintiff on the basis of a warrant that had been quashed by the local court a month prior to the arrest. The plaintiff sued the city, the police superintendent, the police officers and the clerk of court for violation of Fourth Amendment rights. The district court dismissed the claims against the city and the police, and granted summary judgment in favor of the clerk of court. The Court of Appeals reversed, noting that the plaintiff had not had an opportunity for discovery, and writing,

> [t]he defendants should not be able to 'get off the hook' by merely pointing the finger at each other. Someone is surely at fault for failing to establish or execute appropriate procedures for preventing such serious malfunctionings in the administration of justice. Plaintiff should be entitled to discovery in order to determine who is the true culprit responsible for the wrong done her.

*Murray*, 634 F.2d at 366.

Unlike the plaintiff in *Murray*, plaintiff in the case at bar has had ample discovery. He has deposed each of the individual defendants, has received answers to interrogatories, and has prepared affidavits from independent witnesses. Even after discovery, plaintiff has presented nothing which implicates defendant Myers' in the final month of detention. Under the principles of *Celotex*, 477 U.S. 317, 106 S.Ct. 2548, and *Anderson*, 477 U.S. 242, 106 S.Ct. 2505 (discussed at the beginning of this section), plaintiff has failed to meet his burden of production on the causation element of his claim in the face of the motion for summary judgment. Accordingly, based on this court's finding that defendant Myers is immune from plaintiff's claim for damages for the first two months of detention, and on the court's finding that there is a complete failure of proof regarding defendant Myers' involvement in the last month of plaintiff's detention, the court grants summary judgment in favor of defendant Myers in his individual capaci-

ty on plaintiff's Fourteenth Amendment claim.

### C. *Official Capacity Claims*
#### 1. Notice

The named defendants in plaintiff's complaint are "Robert Hobson, Jack Myers, and Mark Harrell, Individually and as Officers of the Richmond Police Department." The phrase "as Officers of the Richmond Police Department" is apparently an attempt to sue the officers in their official as well as their individual capacities. Although this is an acceptable manner of pleading, the use of such language is outdated and it gives rise to confusion about the identity of the defendants.

An official capacity suit is an alternative method of pleading an action against a governmental entity. *Kentucky v. Graham*, 473 U.S. 159, 165, 105 S.Ct. 3099, 3104, 87 L.Ed.2d 114 (1985). In an official capacity action, any award of damages is recovered against the entity itself, not against the personal assets of any specific officer. Prior to 1978, municipalities were not subject to suit under section 1983, so plaintiffs often framed their claims as official capacity actions against municipal officials, rather than naming the municipality directly. *See* S. Nahmod, *Civil Rights and Civil Liberties Litigation*, sections 6.01–6.05 (1986). In 1978, the Supreme Court decided that municipalities could be liable for violations of constitutional rights under section 1983. *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Now, under *Monell*, a plaintiff with a claim against a municipality may name the municipality directly, without having to go through the confusing "official capacity" terminology.

The instant case demonstrates the troublesome ambiguity of the official capacity language. Plaintiff does not employ the words "official capacity", nor does his caption indicate that the action is in reality against the City of Richmond. As a result, defendants contend that the complaint does not adequately identify the city as a defendant, and they ask the court to strike all of

plaintiff's contentions which relate to municipal liability.

The validity of the Motion to Strike turns on whether the city received notice of plaintiff's action. In *Kentucky v. Graham*, 473 U.S. 159, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985), the court wrote, "[a]s long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Graham*, 473 U.S. at 166, 105 S.Ct. at 3105. Similarly, in *Kolar v. County of Sangamon*, 756 F.2d 564 (7th Cir.1985), the court stated that a section 1983 plaintiff who succeeds in proving a damages action against a local governmental entity may recover damages against the entity without having expressly named the entity as a defendant in the action. *Kolar*, 756 F.2d at 566, n. 2.

■ Here, plaintiff named the defendant police officers individually and as officers of the Richmond Police Department. The use of the conjunctive should have put the city on notice that the action included an official capacity element. Moreover, the city was put on notice of the action by the fact that the summonses against the defendants "as officers of the Richmond Police Department" were issued separately from the individual capacity summonses. The court finds that the language of the complaint and the issuance of the summonses gave the city notice of the action. Further, the court finds that the city has had an opportunity to respond to the municipal liability claim (*See* Answer, par. 6; and Defendant's Memorandum in Support of Summary Judgment, at 13–18). Based on these findings, this court holds that the complaint adequately names the city as a defendant and accordingly denies defendants' motion to strike.[10] The court reiterates, however, that the better practice is to make the municipal liability action unmistakably clear in the caption, by expressly naming the municipality as a defendant. *See Duckworth v. Franzen*, 780 F.2d 645, 650 (7th Cir.1985).

### 2. Elements of section 1983 municipal liability action

■ To prevail on his claim against the city, plaintiff must first show that he suffered a constitutional deprivation at the hands of city employees. If he establishes a constitutional deprivation, he must then identify a city policy or custom relevant to the actions of the city employees. Finally, he must show that there is a direct causal link between the policy or custom and his constitutional deprivation. *City of Canton v. Harris*, — U.S. —, 109 S.Ct. 1197, 1203, 103 L.Ed.2d 412 (1989); *see generally Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

■ These elements are the sole focus of a municipal liability action. Qualified immunity, so central to individual capacity actions, has no place in municipal liability actions. As the Court explained in *Owen v. City of Independence*, 445 U.S. 622, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980):

At the heart of [the] justification for a qualified immunity for the individual official is the concern that the threat of personal monetary liability will introduce an unwarranted and unconscionable consideration into the decisionmaking process, thus paralyzing the governing official's decisiveness and distorting his judgment on matters of public policy. The inhibiting effect is significantly reduced, if not eliminated, however, when the threat of personal liability is removed. First, as an empirical matter, it is questionable whether the hazard of municipal loss will deter a public officer from the conscientious exercise of his duties ... More important, though, is the realization that consideration of the mu-

10. The court recognizes that the Fifth Circuit Court of Appeals has implied that plaintiffs must expressly name governmental entities as defendants in order to pursue municipal liability claims. *See Johnson v. Kegans*, 870 F.2d 992, 998 n. 5 (5th Cir.1989). In reliance on *Graham*, 473 U.S. 159, 105 S.Ct. 3099 (1985), and *Kolar*, 756 F.2d 564 (7th Cir.1985), this court rejects the implication of *Kegans* insofar as it applies to cases in which the entity has received notice and an opportunity to respond.

nicipality's liability for constitutional violations is quite properly the concern of its elected or appointed officials.

*Id.* at 655–66, 100 S.Ct. at 1418 (emphasis in original).

In the same opinion, the Court placed the burden of constitutional protection squarely on municipalities, writing,

the threat of liability against the city ought to increase the attentiveness with which officials at the higher levels of government supervise the conduct of their subordinates. The need to institute system-wide measures in order to increase the vigilance with which otherwise indifferent municipal officials protect citizens' constitutional rights is, of course, particularly acute where the frontline officers are judgment-proof in their individual capacities.

*Owen,* 445 U.S. at 652, n. 36, 100 S.Ct. at 1416, n. 36. Bearing in mind the city's responsibility to its residents, this court turns to an examination of whether summary judgment in the city's favor is appropriate in the instant case.

### 3. Fourth Amendment claim

 Plaintiff bases his Fourth Amendment municipal liability claim on allegations similar to those he used to support his individual capacity claim: he contends that he was arrested without probable cause due to (a) the city's failure to train defendants Hobson and Harrell in the proper use of the field test kit; and (b) the city's failure to discontinue use of the kit after the manufacturer stopped selling the reagents. The initial inquiry for the court is whether plaintiff has presented a genuine issue of material fact on the first element of his claim, i.e., whether he was arrested without probable cause.[11]

To establish that he was arrested without probable cause, plaintiff must show that the police officers had an insufficient basis for swearing out the probable cause affidavit. He attempts to make this showing by attacking the reliability of the reagents and the validity of the test method. These attacks, however, do not address the central issue in the probable cause determination. Police officers cannot be omniscient in making probable cause decisions; they make the decisions according to the exigencies of the circumstances. Only that information which was within the officers' knowledge at the time of the arrest is relevant to a subsequent probable cause challenge. *Beck v. Ohio,* 379 U.S. 89, 91, 85 S.Ct. 223, 225, 13 L.Ed.2d 142 (1964); *Brinegar v. United States,* 338 U.S. 160, 176, 69 S.Ct. 1302, 1311, 93 L.Ed. 1879 (1949). In the case at bar, it is not enough to show that outside observers would have questioned accuracy of the reagents, or that defendant Hobson may have made a mistake in performing the test. To survive summary judgment on his challenge to the probable cause affidavit, plaintiff must provide some evidence which would allow an inference that defendants Hobson and Harrell had reason to doubt the accuracy of the reagents, or that they knew that Hobson's testing method was improper.

As this court discussed above, plaintiff has provided no evidence from which a reasonable jury could determine that defendants Hobson and Harrell had any reason to question either the reliability of the reagents or the validity of the test methods. Similarly, plaintiff has not presented any support for his speculation that defendants misrepresented the test results. The record at bar indicates that defendant Hobson was experienced in performing the test, that neither Hobson nor Harrell had any knowledge of previous inaccurate test results, and that the field test indicated that the powder was cocaine (Hobson Aff. pars. 5, 7; Harrell Aff. pars. 5, 7). From this record, a reasonable jury could reach only one conclusion—that defendants Hob-

---

11. This inquiry is distinct from the qualified immunity analysis applicable to the individual capacity claims. In the qualified immunity analysis, the issue was whether a reasonable police officer would have known that the arrest violated clearly established law. For purposes of municipal liability, the court must determine whether defendants Hobson and Harrell in fact had probable cause for arresting plaintiff. If they had probable cause, plaintiff has not suffered a constitutional deprivation, and accordingly cannot pursue a municipal liability claim.

son and Harrell had a sufficient basis for preparing the probable cause affidavit.

Plaintiff argues that the question of whether defendants had probable cause should be left for a jury to resolve. The issue of probable cause in a section 1983 action is often a matter for a jury, but where there is no room for a difference of opinion, the court may make a determination concerning probable cause as a matter of law. *Llaguno v. Mingey*, 763 F.2d 1560, 1565 (7th Cir.1985). This court finds that there is no room for a difference of opinion, and that defendants Hobson and Harrell had probable cause to swear out the challenged affidavit. Because they had probable cause, their actions were not violative of plaintiff's Fourth Amendment rights. There being no Fourth Amendment violation, the court holds that plaintiff has failed to establish the first element of his Fourth Amendment municipal liability claim, and the court grants summary judgment in favor of the city on that claim.

### 4. Fourteenth Amendment claim

Plaintiff's final argument is that the length of his detention was so excessive that it amounted to a deprivation of liberty without due process of law. He does not specify whether he is asserting a substantive or a procedural due process violation. Such a designation is not (as plaintiff appears to believe) a mere intellectual exercise, for the doctrines applicable to procedural due process are very different from those governing substantive due process.

If plaintiff intended to advance a procedural due process claim, the claim has two possible constructions. The first construction is that plaintiff seeks to hold the city liable for the unauthorized actions of its employees. Under this construction, in order to state a claim for a due process violation, plaintiff must meet the requirements delineated in *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981) (overruled on other grounds in *Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986)). In *Parratt*, the Court held that a state may fulfill its duty to provide due process by setting up a tort claim system which enables individuals to seek compensation from the state after they have been deprived of property at the hands of state employees. The Court later reaffirmed and expanded upon the *Parratt* rule in *Hudson v. Palmer*, 468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984). According to *Parratt* and *Hudson*, a deprivation of property by a state employee is not a due process violation so long as the state provides an adequate post-deprivation remedy.

In this circuit, the rule of *Parratt* and *Hudson* applies to deprivations of liberty as well as deprivations of property. *Toney-El v. Franzen*, 777 F.2d 1224, 1227–28 (7th Cir.1985). Accordingly, to survive summary judgment on this first construction of his procedural due process claim, plaintiff would have to show that there is no adequate state remedy for his alleged false imprisonment. He cannot make this showing, for the Indiana Tort Claims Act clearly allows aggrieved individuals to sue municipalities and municipal employees for false imprisonment. *See* Ind.Code 34–4–16.5–3(7); Ind.Code 34–4–16.5–2; *see generally State v. Whitney*, 176 Ind.App. 615, 377 N.E.2d 652 (1978).

The court recognizes that plaintiff cannot now avail himself to the state tort remedy, due to his failure to comply with the statutory notice provisions (see Judgment Entry dated February 8, 1988, granting summary judgment in favor of defendants on pendent state claims). Plaintiff's failure to properly bring his state claim, however, does not relieve him of the application of the *Parratt* rule. As Justice Stevens noted in *Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986):

[the] aspects of a State's tort regime that defeat recovery are not constitutionally invalid, so long as there is no fundamental unfairness in their operation. Thus, defenses such as contributory negligence or statutes of limitations may defeat recovery in particular cases without raising any question about the constitutionality of a State's procedures for disposing of tort litigation.

*Daniels,* 474 U.S. at 342, 106 S.Ct. at 680 (Stevens, J. concurring).

There is no fundamental unfairness in the operation of the Indiana Tort Claims Act with regard to plaintiff's lost claim. Consequently, this court finds that Indiana has an adequate post-deprivation remedy for false imprisonment and holds that plaintiff has failed to state a procedural due process claim with regard to the unauthorized actions of the police officers.

■ The court now turns to the second construction of the procedural due process claim. Plaintiff may have intended his claim to be a challenge to the relevant state rules of criminal procedure. The rule of *Parratt* and *Hudson* does not apply to challenges to governmental procedures; it applies only to challenges to random acts of government employees. *Caldwell v. Miller,* 790 F.2d 589, 608 (7th Cir.1986), citing *Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 435–36, 102 S.Ct. 1148, 1157–58, 71 L.Ed.2d 265 (1982); *see also Toney-El v. Franzen,* 777 F.2d 1224, 1228 (7th Cir.1985).

To support due process challenges to government procedures, plaintiffs must show that under the established procedures they were deprived of their liberty without a meaningful opportunity for a hearing. *Mathews v. Eldridge,* 424 U.S. 319, 333–34, 96 S.Ct. 893, 902, 47 L.Ed.2d 18 (1976), *Toney-El v. Franzen,* 777 F.2d 1224, 1228 (7th Cir.1985). The focus on the opportunity for a hearing is the central characteristic which distinguishes procedural from substantive due process claims. *See* S. Nahmod, *Civil Rights and Civil Liberties Litigation,* section 3.08 (1986). In the instant case, plaintiff's procedural due process challenge goes only to city's provisions for pretrial detainees' hearings; his attacks on the city's alleged procedures pertaining to the lab test results and to the release of detainees are properly categorized as substantive due process claims (addressed below).

■ For procedural due process claims like the one at bar, the standard analysis is a balancing test which weighs the plaintiff's liberty interest against the governmental burden of providing additional procedural safeguards. *Mathews v. Eldridge,* 424 U.S. at 335, 96 S.Ct. at 903. In the instant case, however, an abbreviated analysis is appropriate, because the relevant governmental procedure provided ample opportunity for plaintiff to be heard during his detention. According to Indiana criminal procedure, plaintiff was entitled to and presumably received a prompt initial hearing, at which a judge informed him of his right to counsel and his various other rights in connection with the criminal prosecution. Ind.Code 35–33–7–4; 35–33–7–5. At this hearing, plaintiff (or his attorney if he was represented at the time) could have challenged the field test result. Moreover, after the initial hearing, plaintiff's public defender could have filed a motion seeking judicial review of the continued detention. The public defender did eventually file such a motion, and that motion apparently culminated in plaintiff's release (Complaint, par. 12). Given the means available to bring plaintiff's plight to the attention of a judge, this court cannot find that the extant criminal procedures denied plaintiff a meaningful opportunity for a hearing. Accordingly, the court holds that plaintiff has failed to state a claim for a deprivation of a procedural due process right.

Having found that this case presents no cognizable procedural due process claim, the only remaining inquiry is whether the case presents a viable substantive due process claim.[12] More specifically, the case at this juncture presents two issues: (1) whether one who has been detained with probable cause for possession of cocaine has a substantive due process right to an expedited confirmation of the initial probable cause determination; and (2) whether one who has been detained with probable cause for possession of cocaine has a substantive due process right to release within a reasonable amount of time after law en-

---

**12.** *Parratt* does not apply to substantive due process violations. *Toney-El v. Franzen,* 777

F.2d 1224, 1226–17 (7th Cir.1985).

forcement officials learn that the substance possessed was not cocaine.

 Both of these issues are questions of first impression. On the first issue, however, case law indicates that there is no substantive right to any confirmation of probable cause, much less a right to expedited confirmation. In *Baker v. McCollan,* 443 U.S. 137, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1978), the Court examined whether an individual arrested due to mistaken identification could assert a section 1983 action against the arresting law enforcement officers. The plaintiff in *Baker* argues that the local sheriff should have instituted an identification procedure that would have disclosed the mistaken arrest. The Court rejected the argument, explaining that the initial constitutional requirement that arrests be made with probable cause and the subsequent requirement that detainees be accorded speedy trials are sufficient to fulfill the Constitution's due process provisions. *Baker,* 443 U.S. at 144–45, 99 S.Ct. at 2694–95. The Court went on to say,

> we do not think that a sheriff executing an arrest warrant is required by the Constitution to investigate independently every claim of innocence ... [n]or is the official charged with maintaining custody of the accused named in the warrant required by the Constitution to perform an error-free investigation of such a claim.

*Id.* at 145–46, 99 S.Ct. at 2695.

*Baker* indicates that plaintiff had no constitutional right to a laboratory confirmation of the field test result, because defendants were not required by the Constitution to obtain such a confirmation. The field test, as this court has held, was sufficient to support a probable cause affidavit. Had defendants chosen to rely solely on the field test as the proof of the nature of the powder, plaintiff could have assailed the validity of the test either at his criminal trial or upon a pre-trial motion. That defendants elected to obtain a laboratory test does not create a constitutional right to rapid test results.[13]

This court's determination that there is no constitutional right to an expedited laboratory confirmation of field test results should not be construed as a determination that defendants' conduct is worthy of approbation. It is quite possible that a jury in a tort case presented with these facts would have found defendants' delay in obtaining the test results unreasonable, and would have awarded plaintiff monetary damages. Nonetheless, the issue before this court is not whether defendants' conduct was unreasonable; the issue is whether the conduct is cognizable under section 1983. *See Brown v. Patterson,* 823 F.2d 167 (7th Cir.1987) (plaintiff deserved compensation for false arrest, but under facts presented plaintiff could not state a section 1983 action). There being no constitutional protection against the delay in the laboratory confirmation, this court is constrained to find that plaintiff may not seek compensation under section 1983 for the first two months of his confinement.

 Although there is no Fourteenth Amendment substantive right to expedited confirmation of field test results, the relevant body of case law demonstrates that there is a substantive right to release upon the receipt of exculpatory lab evidence. The *Baker* case is the starting point for the analysis. In *Baker,* after holding that the delay in discovering the mistaken arrest was not a constitutional violation, the Court made a significant observation, stating,

> we may even assume ... that ... depending on what procedures the State affords defendants following arrest and prior to actual trial, mere detention pursuant to a valid warrant but in the face of repeated protests of innocence will after the lapse of a certain amount of time deprive the accused of 'liberty ... without due process of law.'

443 U.S. at 145, 99 S.Ct. at 2695. Since the time the Court made the quoted statement, lower courts have repeatedly acknowledged that under certain conditions, post-arrest

---

**13.** Plaintiff does not assert that defendants had a statutory duty to obtain a laboratory confir- mation, nor has this court discovered any law which would create such a duty.

detentions will be violative of the detainees' substantive due process rights.

In *Coleman v. Frantz,* 754 F.2d 719 (7th Cir.1985), the court identified two key considerations relevant to constitutional examinations of post-arrest detentions: the duration of the detention and the governmental burden of providing procedural safeguards. *Coleman,* 754 F.2d at 724. Addressing the duration of detention, the court in *Coleman* found that an eighteen-day delay before an initial hearing amounted to a violation of liberty without due process of law. Although the *Coleman* decision dealt with initial hearings rather than ultimate release, the case provides support for plaintiff's position that a thirty day delay in release constitutes a due process violation.

Addressing the governmental burden in providing procedural safeguards, the *Coleman* court found that the requirement that detainees be given timely initial hearings placed a small burden on law enforcement and judicial officers. 754 F.2d at 724. In the case at bar, the burden would be similarly slight. There are several simple procedures through which the Richmond Police Department could ensure that exculpatory laboratory results are immediately conveyed to the appropriate officials. The most obvious of these is a routine telephone call to the prosecutor or to the public defender. The burden of a phone call or some similarly expedient procedure is hardly overwhelming, in light of the detainee's grave interest in the result.

The *Coleman* considerations indicate that plaintiff had a substantive right to release within a reasonable amount of time after defendant Myer picked up the laboratory test result. Other cases also support this conclusion. As this court mentioned above, the case of *Powe v. City of Chicago,* 664 F.2d 639 (7th Cir.1981) suggested that there is a substantive due process right relevant to pretrial detention. The lesson of *Powe* bears repetition. The court in dicta criticized a district court's determination that the validity of an arrest negated a subsequent due process claim for continued confinement. The district court had based its conclusion on *Baker,* but the

*Powe* court questioned the conclusion, writing,

> The *Baker* Court held that, after a valid arrest pursuant to valid warrant, the continued detention of the arrestee until it was discovered that he was not the person sought, was perfectly valid, even though such detention lasted several days. Nothing in *Baker* compels the conclusion that the validity of the arrest renders utterly unassailable the continued detention of the arrestee after it is discovered that he is not the person sought.

*Powe,* 664 F.2d at 651 (emphasis in original).

The instant case is analogous to the scenario described in the second sentence of the quoted passage. Here, plaintiff was detained on charges of possession of cocaine for a month after defendant Myers discovered that the powder plaintiff possessed was not cocaine. Nothing in *Baker* precludes the recognition of a constitutional violation for such a detention. To the contrary, *Baker* suggests that such a detention is unconstitutional. *Accord, Brown v. Patterson,* 823 F.2d 167, 169 (7th Cir.1987) ("a prolonged confinement of an arrested person without a hearing to determine whether he is the person named in the warrant would ... violate the Fourteenth Amendment".)

The most recent case which recognizes a substantive deprivation for prolonged post-arrest detention is *Johnson v. City of Chicago,* 711 F.Supp. 1465 (N.D.Ill 1989). In *Johnson,* the plaintiff was stopped for a traffic violation, and was arrested pursuant to an outstanding warrant for a person having the same name. The plaintiff was detained for six days before the police discovered their mistake and released him. The court held that although the police had probable cause for the arrest, they had violated the plaintiff's due process rights by detaining him without taking routine steps to determine whether he was the person named in the warrant. 711 F.Supp. at 1470.

■ If the failure to perform a routine identity check can be a substantive due

process violation, certainly the failure to take routine steps to release an innocent person is also a violation.[14] This court finds that there is a substantive due process right to release within a reasonable amount of time after law enforcement officials learn that a detainee is innocent of the charges on which he was detained. Further, the court finds that plaintiff has presented facts from which a jury could determine that defendants deprived him of his right to release.[15]

■ Having found that plaintiff sufficiently alleged that he was deprived of a constitutional right, this court turns to whether he has provided sufficient proof of a causal nexus between a Richmond custom or policy and the alleged deprivation. The court first notes that plaintiff does not allege that the delay in his release was due to the city's failure to train police officers in the proper method of communicating exculpatory evidence.[16] Rather, he alleges that the city is liable for its failure to institute procedures that would rapidly convey exculpatory information to the appropriate public officials.

Based on the record, plaintiff's allegation concerning municipal policy is sufficient to survive defendants' motion for summary judgment. Defendants state that defendant Myers "reported the Pennington test result to the Prosecutor's Office [the day he picked up the results or the next day] by sending copies of the test result via the Records Clerk" (Defendants' Memorandum in Support of Summary Judgment, at 4). They further state that defendant Myers was not aware that plaintiff was in jail (Memorandum, at 4). Taken together, these statements allow the inference that Myer followed his normal procedure in re-

porting the test results. Although the "records clerk" is not identified, the implication is that he or she is part of a procedural chain of communication. If the structure of this chain of communication was pursuant to a municipal policy or custom, and if that policy or custom was the cause of the alleged unreasonable delay in plaintiff's release, plaintiff may be entitled to recover damages from the city. If, however, the delay was an isolated incident or was due to an unforeseeable breakdown in the established procedure, the city could not be held liable to plaintiff. *Jones v. City of Chicago*, 787 F.2d 200, 204 (7th Cir.1986). Although the facts now before the court are minimal, a reasonable jury presented with the record could find that the execution of an established Richmond Police Department procedure caused plaintiff's alleged substantive due process deprivation. As such, the court must deny summary judgment as against the City of Richmond.

## III. SUMMARY

The court finds that defendants Hobson and Harrell are immune from plaintiff's suit and GRANTS summary judgment in their favor on all claims. The court further finds that plaintiff failed to state a Fourth Amendment claim against defendant Myers, and GRANTS summary judgment in favor of Myers on that claim. In addition, defendant Myers is immune from plaintiff's Fourteenth Amendment challenge to the first two months of his detention, and plaintiff failed to establish any causal link between defendant Myers' conduct and the final month of his detention, so the court GRANTS summary judgment

14. In *Lewis v. O'Grady*, 853 F.2d 1366 (7th Cir. 1988), the court indicated that an unreasonable detention after mistaken arrest was a violation of the Fourth, rather than the Fourteenth Amendment. In *Lewis*, however, the court never made a determination of whether the police had probable cause for the initial arrest. The weight of the authority indicates that when the original arrest is valid, any challenge to the subsequent detention must be brought as a substantive due process claim under the Fourteenth Amendment. *See Brown v. Patterson*, 823 F.2d 167, 169 (7th Cir.1987).

15. The determination of whether the evidence received by defendant Myers conclusively established plaintiff's innocence, and whether the delay in his release was reasonable will be for the jury in the trial of this action.

16. Plaintiff's allegations concerning failure to train are addressed solely to the training of police officers in the methodology for drug identification field testing (see Plaintiff's Contention, par. 12).

in favor of defendant Myers on the Fourteenth Amendment claims.

With regard to the defendant City of Richmond, the court finds that plaintiff adequately named the city as a defendant. Plaintiff failed, however, to state a Fourth Amendment claim against the city, and also failed to state any Fourteenth Amendment procedural due process claims against the city. However, the record contains evidence which precludes summary judgment on plaintiff's claim for compensatory damages against the city for violation of his substantive due process right to release within a reasonable amount of time after the police learned of the laboratory test result. On that claim, the court DENIES summary judgment and RETAINS the City of Richmond as a defendant in this action.