THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
TIMOTHY QUARLES, Defendant-Appellant.

Third District   No. 79-978

Opinion filed August 12, 1980.—Supplemental opinion filed on denial of rehearing
September 17, 1980.

Robert Agostinelli and Karen Szpajer, both of State Appellate Defender's
Office, of Ottawa, for appellant.

Edward F. Petka, State's Attorney, of Joliet (John X. Breslin and Gary F.
Gnidovec, both of State's Attorneys Appellate Service Commission, of counsel),
for the People.

Mr. JUSTICE SCOTT delivered the opinion of the court:

This is an appeal from an order of conviction entered by the circuit
court of Will County after a stipulated bench trial. Defendant was
sentenced to a term of 30 months probation, conditioned upon payment
of costs and restitution. A portion of defendant's cash bail was awarded to
the county as reimbursement for the services of the public defender.

Early in the afternoon on December 1, 1978, defendant was arrested
for the attempted burglary of an apartment at 260 North Center Street,
Joliet, Illinois, following a telephone complaint from Danny Hinkle and
Diane Hill that defendant was trying to break into their apartment.
Nothing was taken from the apartment because defendant did not enter
the apartment.

Joliet police detective James Stewart investigated the complaint af-
ter defendant's arrest. He contacted the owner of the apartment build-
ing, who told him that Beverly Jasdura leased the apartment. He had not

heard of Diane Hill or Danny Hinkle. Jasdura had asked if defendant could move in with her and the owner had said he could. Stewart and the owner inspected the apartment and found no sign of forced entry. Apparently no one contacted Jasdura.

On December 2, 1978, at 7:45 p.m., Detective Stewart interviewed defendant. Stewart admitted that at the time of the interview he knew Hill and Hinkle had no possessory right to the apartment and that there was no substance to the attempted burglary charge; however, he did not tell that to defendant. Instead, Stewart, who was not in uniform at the time, took defendant from his cell to the female booking room at the Joliet jail. They had a conversation before defendant was advised of his constitutional rights. Defendant asked Stewart if he were a lawyer. Stewart told defendant he was a detective and wanted to talk to him about his arrest. Defendant was given a constitutional rights form, which he signed. Stewart then asked defendant about the attempted burglary at 260 North Center Street. Defendant told Stewart he had lived there but moved out at Thanksgiving. He had gone back on December 1 for some of his belongings.

Stewart then asked defendant about a burglary at the White Fence Farm, a restaurant near Joliet. He told defendant that the police had fingerprints, but did not tell him the police knew whose fingerprints these were. Within 20 to 25 minutes defendant admitted that he, Danny Hinkle, Diane Hill and Steve Lundemo had committed the burglary.

On January 3, 1979, defendant was indicted for the burglary of the White Fence Farm. Defendant pled not guilty and filed a motion to suppress all confessions, statements or admissions made by him. That motion alleged defendant had not been told his constitutional rights prior to the interrogation and that he had requested but was denied counsel. On July 31, 1979, defendant filed an amended motion to suppress. That motion alleged defendant was being illegally held in custody at the time of his interrogation.

A hearing on the motions was held on September 18, 1979. Stewart and the defendant testified at the hearing. Defendant said that he had asked for counsel. He could not remember whether he had given his statement before or after he was informed of his constitutional rights. The trial court denied the motions. The court found that the police had probable cause to detain defendant, that defendant had been advised of his constitutional rights before he made a statement to Detective Stewart, and that defendant had understood and willingly waived his rights.

On December 7, 1979, a stipulated bench trial was held. The trial court found the State had met its burden of proof and found defendant guilty. A presentence investigation was waived. The trial court sentenced defendant to 30 months' probation, conditioned in part on payment of

costs and restitution. The trial court also ordered that the portion of defendant's cash bail left after deducting court costs was to be used to reimburse the county for the services of the public defender.

On appeal defendant argues that the trial court erred in denying the motions to suppress and in ordering that defendant's cash bail deposit be used to reimburse the county for the services of the public defender. Since we reverse the judgment of the trial court, we shall consider only the first issue raised by defendant.

■■ Defendant argues that the trial court erred in denying his motions to suppress statements and all evidence discovered as a result of the statements, because the statements were the fruit of the illegal detention of defendant. The State insists Detective Stewart had probable cause to arrest defendant for the attempted burglary. In support of their theories both defendant and the State have indulged in lengthy discussions, based largely on presumption, regarding probable cause for defendant's arrest for the attempted burglary of 260 North Center Street. We comment on that arrest only to say we find that there was probable cause for that arrest.

The important issue is whether Stewart had probable cause to detain defendant after he discovered there was no substance to the attempted burglary charge or to arrest defendant for the burglary of the White Fence Farm. We find that he did not.

Stewart's investigation of the attempted burglary at 260 North Center Street revealed that Hill and Hinkle had no possessory interest in the apartment; that the owner of the building had given the lessee of the apartment, Jasdura, permission to let defendant live there with her; and that there were no signs of forced entry into the apartment. We find Stewart's unexplained failure to contact Jasdura regarding the attempted burglary indicative of his belief that the charge was without substance. He nevertheless questioned defendant regarding the attempted burglary. Defendant's answers were consistent with the results of Stewart's investigation. At that point Stewart should have released defendant, since he no longer had probable cause to believe defendant had committed the offense of attempted burglary.

Instead Stewart retained defendant in custody and questioned him about the White Fence Farm burglary. We believe that this retention in custody was an arrest (*People v. Goode* (1979), 72 Ill. App. 3d 798, 800, 391 N.E.2d 156; Ill. Rev. Stat. 1979, ch. 38, par. 107—5(a)) without a warrant. Such an arrest must be based upon probable cause. Before Stewart could legally arrest defendant he had to reasonably believe that defendant had committed an offense. (Ill. Rev. Stat. 1979, ch. 38, par. 107—2(c).) Whether an arresting officer's belief is reasonable depends on the facts and circumstances of each case, and these facts must be specific

and articulable. (*People v. Attaway* (1976), 41 Ill. App. 3d 837, 354 N.E.2d 448.) Before questioning defendant, Stewart knew that the White Fence Farm had been burglarized, that Beverly Jasdura was the manager at the White Fence Farm; and that Jasdura had asked the building owner if defendant could live in Jasdura's apartment with her. The State refers in its brief to other circumstances, but has failed to state what these were. Stewart also referred to fingerprints found at the White Fence Farm during his interrogation of defendant, but there is nothing to indicate that the fingerprints belonged to defendant. Therefore, we must conclude that Stewart lacked probable cause at the time of the arrest to believe that defendant had committed the burglary at the White Fence Farm. Evidence obtained as the result of an illegal arrest is generally inadmissible. *Davis v. Mississippi* (1969), 394 U.S. 721, 22 L. Ed. 2d 676, 89 S. Ct. 1394.

The State has argued that there were intervening circumstances subsequent to the arrest which sufficiently attenuated the confession and evidence obtained as a result thereof from any primary taint. (*People v. Faulisi* (1977), 51 Ill. App. 3d 529, 366 N.E.2d 1072; *People v. Althide* (1979), 71 Ill. App. 3d 963, 389 N.E.2d 240.) This argument is premised on the passage of time between the initial arrest for the attempted burglary and defendant's confession. We have determined that the unlawful arrest which tainted the confession occurred only minutes before the confession. During those few minutes Detective Stewart led defendant to believe that he was being charged with the attempted burglary at 260 North Center Street and that the police had found his fingerprints at the White Fence Farm. We fail to find any circumstances which purge the confession of its primary taint which would justify the trial court's denial of defendant's motions to suppress his statements and all evidence derived therefrom. We therefore reverse defendant's conviction.

For the reasons stated above, the judgment of the circuit court of Will County is hereby reversed.

ALLOY, P. J., and STENGEL, J., concur.

## SUPPLEMENTAL OPINION ON DENIAL OF REHEARING

Mr. JUSTICE SCOTT delivered the opinion of the court:
An opinion in this case was filed by this court on August 12, 1980, which reversed the trial court's conviction of the defendant. Subsequently, on August 25, 1980, the defendant filed a petition for rehearing in which it is alleged that the court failed to directly address the contention of the defendant that his cash bail deposit may not be used to

reimburse the county for the services of the public defender pursuant to section 110—7(g) of the Criminal Code of 1961 (Ill. Rev. Stat. 1979, ch. 38, par. 110—7(g)).

■■ This contention of the defendant should have been addressed in the light of our supreme court's recent decision in *People v. Cook* (1980), 81 Ill. 2d 176, 407 N.E.2d 56. In *Cook* our supreme court held section 110—7(g) of our Criminal Code of 1961 to be unconstitutional and hence the cash bail deposit posted by the defendant in the instant case should be returned to him, and it is so ordered by this court.

As supplemented by this order, the judgment of the Circuit Court of Will County is reversed.

Having supplemented the opinion heretofore entered by this court on August 12, 1980, the defendant's petition for rehearing is denied.

Reversed with directions, and petition for rehearing denied.

ALLOY, P. J., and STENGEL, J., concur.