PLANNED PARENTHOOD ASSOCIATION OF KANSAS CITY, MISSOURI, INC., Naim S. Kassar, M.D., Reproductive Health Services, Allen S. Palmer, D.O., Appellees,

v.

John ASHCROFT, Attorney General of State of Missouri, Ralph L. Martin, Prosecuting Attorney of Jackson County, Missouri, Appellants.

PLANNED PARENTHOOD ASSOCIATION OF KANSAS CITY, MISSOURI, INC., Naim S. Kassar, M.D., Reproductive Health Services, Allen S. Palmer, D.O., Appellants,

v.

John ASHCROFT, Attorney General of State of Missouri, Ralph L. Martin, Prosecuting Attorney of Jackson County, Missouri, Appellees.

Nos. 80–1130, 80–1530.

United States Court of Appeals,
Eighth Circuit.

Submitted Nov. 17, 1980.

Decided Nov. 30, 1981.

Before LAY, Chief Judge, HENLEY, Circuit Judge, and HARRIS,* Senior District Judge.

LAY, Chief Judge.

This supplemental opinion is necessitated by reason of our previous certification to the district court relating to two issues. In our original opinion, we vacated the district court's finding that the hospitalization requirement for second trimester abortions, under section 188.025 of the Missouri statutes, is unconstitutional. We remanded that issue to the district court for further proceedings and findings as to whether the hospitalization requirement is a substantial burden on a woman's decision to have an abortion and, if so, whether the state has shown a compelling state interest which justifies the requirement. We also vacated the district court's finding that the state may require a physician to file postabortion complication reports under section 188.052.2 and remanded this provision for reconsideration in view of the argument made by the parties.

In accord with our certification the district court took additional evidence[1] and made further findings regarding the statute's hospitalization requirements for all second trimester abortions.[2]

The district court, the Honorable Elmo B. Hunter presiding, found: (1) only one hospital in Missouri currently performs second trimester dilation and evacuation (D&E) procedures; (2) second trimester D&E procedures performed in a hospital are generally significantly more expensive than the same procedures performed in an outpatient facility; and (3) requiring all second trimester abortions to be performed in a hospital results in fewer second trimester procedures being performed than if hospitalization was not required. As a result, the district court found the second trimester D&E procedure, the safest post-12 week abortion technique currently available, is an alternative which is not available to many pregnant women in Missouri. On this basis Judge Hunter found that section 188.025 creates a substantial interference with and imposes a direct burden on a woman's decision to have an abortion.

I. *Second Trimester Hospitalization Requirement.*

■ Section 188.025 requires that second and third trimester abortions be performed in a hospital. Mo.Ann.Stat. § 188.025 (Vernon). If state legislation creates substantial interference with and imposes a direct burden on a woman's decision to have an abortion, then the state requirement is to be evaluated to determine if it reasonably relates to the state's interest in maternal health. *Roe v. Wade*, 410 U.S. 113, 164, 93 S.Ct. 705, 732, 35 L.Ed.2d 147 (1973); *Planned Parenthood Ass'n v. Ashcroft*, 655 F.2d 848, 854 (8th Cir. 1981).

---

* Oren Harris, Senior District Judge, Eastern and Western Districts of Arkansas, sitting by designation.

1. Further evidence was taken on these issues in a hearing conducted on August 6–7, 1981. At that hearing, plaintiffs elicited testimony from Judith A. Widdicombe, President and Executive Director of Reproductive Health Services; Wayne Schramm, Director of the Bureau of Health Data Analysis of the Missouri Division of Health; Dr. Stanley Henshaw, Senior Research Associate at the Alan Guttmacher Institute; and Dr. Samuel G. Eubanks, Jr., a board

certified specialist in the fields of obstetrics and gynecology. Defendants presented no testimony at this hearing, but at its conclusion did introduce into evidence the deposition of Dr. Willard Cates, taken on July 21, 1981, in Atlanta, Georgia. The deposition of Dr. Cates was duly received by the court.

2. Section 188.025 states:
 Every abortion performed subsequent to the first twelve weeks of pregnancy shall be performed in a hospital.
Mo.Ann.Stat. § 188.025 (Vernon).

■ This court concluded previously, and additional evidence presented to the district court reinforces the conclusion, that D&E is the most used and safest procedure for second trimester abortion. *Ashcroft,* 655 F.2d at 855.

At the original trial of this action, the district court concluded that second trimester D&E was available only in one hospital in Missouri. That conclusion rested solely on the personal knowledge of two physicians, neither of whom testified that he was familiar with the policies of the hospitals throughout the state. However, evidence presented at the evidentiary hearing persuasively corroborates the district court finding.[3] The state did not dispute that any hospital other than Truman Medical Hospital has performed or is willing to perform second trimester abortions using the D&E procedures.

The record demonstrates that hospitalized D&E's are more expensive than nonhospitalized D&E's. There exists evidence that some hospitalized second trimester D&E procedures are twice as expensive as nonhospitalized D&E procedures.[4] The district court concluded from the evidence that requiring hospitalized second trimester abortions places a financial burden on many women seeking such abortions.[5] On the basis of the record presented, this finding is not clearly erroneous.

Since section 188.025 creates a substantial interference with and imposes a direct burden on a woman's decision to have an abortion, the state has the burden of showing that Missouri's requirement reasonably relates to the protection of the woman's health. As we stated in our previous decision, the state must show that nonhospitalized D&E procedures can reasonably be con-

3. Wayne Schramm, the Director of the Bureau of Health Data Analysis for the Missouri Center for Health Statistics, testified that in 1981 his office began to record second trimester abortions by the D&E method. Only one hospital reported performing any second trimester abortions by the D&E procedure. This is the same hospital, Truman of Kansas City, reported in the previous proceedings before the court.

Stanley Henshaw, Senior Research Associate at the Alan Guttmacher Institute, which collects and analyzes abortion statistics on a state-by-state basis, testified that in 1979 and 1980, three hospitals reported one or more second trimester abortions by any method. The Kansas City hospital did more than 99 per cent of all second trimester abortions in those two years. One hospital reported one second trimester abortion in each of those two years; the other reported three abortions in each of the two years. He testified that the Institute inferred that those latter two hospitals are not really making abortion services available to women given the infrequency of second trimester abortions at those two hospitals.

4. Dr. Samuel G. Eubanks, Jr., a practicing physician in Louisville, Kentucky, specializes in obstetrics and gynecology. He practices in an office that has performed 15,500 abortions since 1976; he personally has performed approximately 1,400 second trimester D&E's. He testified that in Kentucky the average cost of a nonhospitalized second trimester abortion was about one-half the cost of what it would be in the hospital.

In the original proceedings, witnesses testified that the increase in the cost burden to the woman of obtaining second trimester D&E's in hospitals, rather than clinics, runs from $150.00 to $1,650.00.

5. During the period when all second trimester abortions were required to be performed in hospitals, 540 procedures were performed. In 1980, when that requirement was removed, the total number of second trimester procedures performed in Missouri was 1,390, 700 of which were performed in hospitals and 690 of which were performed in outpatient facilities. Dr. Henshaw testified that Missouri met only 13 per cent of the perceived need for second trimester abortions in the state in 1979; however, it met 34 per cent of the perceived need in 1980. In 1980, there were two second trimester abortion providers in the state, Truman Medical Hospital of Kansas City and Reproductive Health Services of St. Louis, a clinic. In 1979, only Truman Medical Hospital provided second trimester abortions. Dr. Henshaw would not infer that Reproductive Health Services substantially met all the need for second trimester abortions in the St. Louis area. Dr. Henshaw also testified that nationally 9 per cent of all abortions performed were second trimester abortions. In 1979, 3.4 per cent of all abortions performed in Missouri were second trimester abortions, but in 1980, when abortions could be performed in outpatient clinics, the figure was 6.9 per cent.

Dr. Eubanks also testified that the higher cost of hospitalized second trimester D&E procedures placed a financial burden on many patients seeking abortions.

sidered more dangerous than hospital procedures, including hospitalized D&E. *Ashcroft*, 655 F.2d at 856.

The central issue is the relative safety of nonhospitalized D&E and hospitalized methods. No quantitative studies are cited which directly compare the relative safety of the two procedures. However, the district court has found explicitly that a nonhospitalized second trimester D&E procedure is just as safe as those second trimester D&E procedures conducted in hospitals.[6] Since the district court's finding is not clearly erroneous, we find that nonhospitalized second trimester D&E procedures are no more dangerous to maternal health than hospitalized procedures. Consequently, we hold that section 188.025 is not reasonably related to maternal health and, therefore, the requirement that *all* second trimester abortions be performed in hospitals is un-

constitutional. *See Planned Parenthood v. Danforth*, 428 U.S. 52, 76, 96 S.Ct. 2831, 2844, 49 L.Ed.2d 788 (1976).

## II. *Recordkeeping.*

Subsection 188.052.2 of the Missouri statutes requires physicians to complete individual complication reports concerning post-abortion care that they provide.[7] Plaintiffs argue that a physician may be faced in completing these reports with the situation where the patient will not or cannot provide the necessary information. Plaintiffs argue that the physician is then faced with the dilemma of filing a report with incomplete data, thereby subjecting himself to criminal liability, or refusing to treat the patient.

The district court was not convinced that a reasonable interpretation of subsection 188.052.2 would place physicians in the di-

**6.** We are aware of the Sixth Circuit's decision in *Akron Center for Reproductive Health, Inc. v. City of Akron*, 651 F.2d 1198 (6th Cir. 1981). In *Akron*, the plaintiffs tried to show that because of the D&E procedure, abortion through the 17th or 18th week of pregnancy is safer than childbirth. Thus, they argued that, under *Roe v. Wade*, the state's interest in maternal health does not become compelling before that time and the requirement that all second trimester abortions be performed in hospitals is unconstitutionally overbroad.

In the district court, the plaintiffs presented evidence that early second trimester clinical abortions were just as safe as second trimester abortions performed in hospitals. The district court, however, did not find plaintiff's evidence so convincing that it was willing to discard the Supreme Court's formulation in *Roe v. Wade*.

The Sixth Circuit noted that two district courts held that the state's interest in the health of the pregnant woman does not become compelling until the 18th week of pregnancy. *Margaret S. v. Edwards*, 488 F.Supp. 181, 194–96 (E.D.La.1980) and *Planned Parenthood Ass'n v. Ashcroft*, 483 F.Supp. 679, 687 (W.D. Mo.1980). The Sixth Circuit found the rationale of these decisions persuasive. However, it also found that, by affirming *Gary-Northwest Indiana Women's Services, Inc. v. Bowen*, 496 F.Supp. 894, 896–902 (N.D.Ind.1980), *aff'd sub nom. Gary-Northwest Indiana Women's Services, Inc. v. Orr*, 451 U.S. 934, 101 S.Ct. 2012, 68 L.Ed.2d 321 (1981), the Supreme Court had an opportunity to retreat from the "bright line" drawn in *Roe v. Wade* and declined to do so. Thus, it affirmed the district court's holding that the statute was constitutional.

Evidence adduced at the original trial in this cause and the evidentiary hearing suggests that the nonhospitalized procedures may actually be safer. The evidence cited in the original opinion is noted by this court in *Ashcroft*, 655 F.2d at 857 n.12. At the evidentiary hearing, Dr. Willard Cates, Chief of the Abortion Surveillance Branch of the Family Planning Evaluation Division at the Center for Disease Control, stated that in his opinion D&E procedures through 16 weeks after the last menstrual period (14 weeks after conception) are just as safe in outpatient facilities as they are in hospitals. The district court views the testimony of Dr. Cates to say that section 188.025 prevents D&E procedures, particularly in the 15th and 16th weeks after the last menstrual period. Also, the district court concluded that, even though testimony tended to show that hospitals are better equipped to treat postabortion infections, such infections do not occur until 24 to 72 hours after the procedure is completed. By that time a patient will have been dismissed from either a hospital or an outpatient facility.

**7.** Subsection 188.052.2 states:

An individual complication report for any post-abortion care performed upon a woman shall be completed by the physician providing such post-abortion care. This report shall include:

(1) The date of the abortion;

(2) The name and address of the abortion facility or hospital where the abortion was performed;

(3) The nature of the abortion complication diagnosed or treated.

Mo.Ann.Stat. § 188.052.2 (Vernon).

lemma envisioned by plaintiffs. The court interprets the statute to require physicians to complete the reports using data that is reasonably available to them. That interpretation is shared by the Missouri attorney general. Since physicians are required only to report information that is reasonably available to them, section 188.052.2 does not place physicians in the dilemma of refusing treatment to patients or subjecting themselves to criminal liability by filing an incomplete report when the patient refuses to or cannot provide data to be included in the post-abortion complication report.

The reporting requirement is not subject to strict scrutiny analysis, as there are no suspect classifications or fundamental rights at stake. The reporting requirement need only be rationally related to a constitutionally permissible purpose. The district court, finding that the reporting requirements are consistent with the holding of *Planned Parenthood v. Danforth, supra,* ruled that it is rationally related. The requirements of subsection 188.052.2 provide the state with information that is helpful to medical assistance, judgments, and medical standards. Thus, it is also reasonably related to the state's interest in protecting maternal health. *Connecticut v. Menillo,* 423 U.S. 9, 10–11, 96 S.Ct. 170, 171, 46 L.Ed.2d 152 (1975); *Roe v. Wade,* 410 U.S. at 164, 93 S.Ct. at 732.[8]

### III. *Conclusion.*

We affirm the district court's finding that the requirement of hospitalization for second trimester abortions under section 188.025 is unconstitutional. We affirm the district court's finding that a state may require a physician to file postabortion complication reports under subsection 188.052.2. These rulings shall be incorporated into our prior judgment, *Planned Parenthood Ass'n v. Ashcroft,* 655 F.2d 848 (8th Cir. 1981), and the integrated judgment as now amended shall issue.

It is so ordered.

8. Dr. Cates testified that keeping the type of statistics mandated by the statute has been shown to contribute to the safety of abortion procedures.