**Rafael GARCIA, Plaintiff–Appellant,**

v.

**CITY OF CHICAGO, ILLINOIS, Anna Gall, County of Cook, et al., Defendants–Appellees.**

No. 92–4090.

United States Court of Appeals, Seventh Circuit.

Argued Nov. 2, 1993.

Decided May 19, 1994.

Rehearing and Suggestion for Rehearing En Banc Denied Aug. 15, 1994.

John B. Cashion, Chicago, IL (argued), for Rafael Garcia.

Diane Larsen, Robert W. Barber, Asst. Corp. Counsel, (argued), Office of Corp. Counsel, Lawrence Rosenthal, Deputy Corporate Counsel, Frederick S. Rhine, Asst. Corp. Counsel (argued), Kelly R. Welsh, Asst. Corp. Counsel, Geri L. Yanow, Benna R. Solomon, Office of Corp. Counsel, Appeals Div., Chicago, IL, for City of Chicago, IL and Anna Gall.

David R. Butzen, Connie R. Barba, Terry L. McDonald, Asst. State Atty., Office of State's Atty., of Cook County, Federal Litigation Div., Chicago, IL, for County of Cook, C. Richard English, Jack O'Malley and Michael F. Sheahan.

Before WOOD, Jr., CUDAHY, and MANION, Circuit Judges.

HARLINGTON WOOD, JR., Circuit Judge.

On March 15, 1991, Chicago Police Officer Anna Gall arrested Rafael Garcia, who at the time was on probation for two felonies and had an outstanding bond forfeiture warrant, for possession of a controlled substance. Officer Gall had discovered by Garcia's feet a plastic bag containing a white, powdery substance, but did not test the substance before making the arrest. In the process of arresting Garcia, Gall struck him in the head with her flashlight,[1] and the police took Garcia to St. Mary of Nazareth Hospital for treatment of his injuries. The next day a hearing took place in the Circuit Court of Cook County (the *Gerstein* hearing)[2] to determine whether probable cause existed to detain Garcia.

At that time, Garcia remained hospitalized under twenty-four hour guard and therefore was unable to attend the *Gerstein* hearing.[3] Instead, a Public Defender represented Garcia at the hearing and asked for reasonable bond on his behalf. The prosecutor petitioned the court to issue a warrant and set bail for Garcia's violation of probation. The court found probable cause to detain Garcia, and set his bond for violating probation and possessing a controlled substance.

On March 18, while Garcia remained hospitalized, the court set a preliminary hearing for April 10. St. Mary of Nazareth Hospital released Garcia on March 20, and personnel from the Sheriff's office immediately placed Garcia, who did not make bond, in custody at the Cook County Jail. On March 26, the Chicago Police Department laboratory tested the powder and found it to be negative for any controlled substances. The laboratory communicated that information to the State's Attorney's office, · and at the preliminary hearing on April 10, Judge Mary Maxwell Thomas granted the prosecutor's request for a *nolle prosequi*. On April 12, the court reinstated Garcia's probation status. Cook County Jail released Garcia on April 15.

Garcia then filed this lawsuit for money damages in the District Court for the Northern District of Illinois. Garcia's first amended complaint named as defendants Officer Gall, the City of Chicago, the Cook County Department of Corrections, Director of the Cook County Department of Corrections C. Richard English, Cook County State's Attorney Jack O'Malley, and Cook County Sheriff Michael F. Sheahan. Garcia claimed that: (1) the *Gerstein* hearing was inadequate because he was not brought before the judge, due to his hospitalization; (2) Gall used excessive force against him and did not have probable cause to arrest him; (3) O'Malley, Sheahan, and English were responsible for detaining him without probable cause; and (4) the City of Chicago's procedures for testing substances seized as narcotics were constitutionally inadequate. All defendants filed dispositive motions in response to Garcia's complaint.

The district court dismissed State's Attorney O'Malley and the Cook County Department of Corrections based on Eleventh Amendment immunity from civil liability, and dismissed all of Garcia's *Gerstein* claims; the court did not dismiss Sheriff Sheahan and Director English because that issue was not before the court. Garcia then filed a motion to reconsider, as well as a motion to file a second amended complaint that in essence repeated the *Gerstein* claims from the first amended complaint. Sheahan and English filed a motion for summary judgment. The

---

1. Garcia settled for $25,000 a claim against Gall based on her use of excessive force, and that claim is not at issue in this appeal.

2. *Gerstein v. Pugh* held that "the Fourth Amendment requires a timely judicial determination of probable cause as a prerequisite to detention," 420 U.S. 103, 126, 95 S.Ct. 854, 869, 43 L.Ed.2d

54 (1975), and probable cause hearings that take place after arrests made without warrants commonly are referred to as *Gerstein* hearings.

3. Garcia spent approximately five days in the hospital.

district court denied both of Garcia's motions, and dismissed Sheahan and English.

Garcia then filed a motion to file a third amended complaint, which included new claims against the City of Chicago and Officer Gall, but included none of the other defendants. The district court granted the motion, and the City of Chicago and Gall moved to dismiss counts three through six of the complaint, which the district court granted. Counts I and II, for excessive force and false arrest, named only Gall as the defendant. Gall and Garcia settled those claims for $25,000, and Garcia reserved the right to appeal earlier rulings of the district court. Garcia now appeals from the dismissals of O'Malley, Sheahan, and English, the denial of leave to file his second amended complaint, and the dismissals of the fifth and sixth counts of his third amended complaint, which alleged that the City's procedures for testing substances to determine if they are controlled were constitutionally deficient.

### A. Defendant O'Malley

■ The Eleventh Amendment prohibits federal courts from deciding suits brought by private litigants against states or their agencies, and that prohibition extends to state officials acting in their official capacities. *Will v. Michigan Dept. of State Police,* 491 U.S. 58, 71, 109 S.Ct. 2304, 2312, 105 L.Ed.2d 45 (1989). Whether a particular official is the legal equivalent of the State itself is a question of that State's law, *Santiago v. Daley,* 744 F.Supp. 845, 845 & n. 1 (N.D.Ill.1990), and the Illinois Supreme Court decided in 1990 that State's Attorneys are state officials. *Ingemunson v. Hedges,* 133 Ill.2d 364, 140 Ill.Dec. 397, 400, 549 N.E.2d 1269, 1272 (1990) (State's Attorneys are state, not county, officials); *see also Scott v. O'Grady,* 975 F.2d 366, 371 (7th Cir.1992) (those who prosecute cases pursuant to state statute are state officials for the purposes of

constitutional liability); *Santiago,* 744 F.Supp. at 845–46. Because O'Malley was acting in his official capacity as Cook County State's Attorney, Garcia cannot recover money damages from him.

■ Garcia does argue that he is entitled to injunctive relief from O'Malley, and the Eleventh Amendment provides no shield against such requests. *Will,* 491 U.S. at 71, 109 S.Ct. at 2312. When Garcia requested injunctive relief in his second amended complaint, however, Cook County jail had already released him from their custody, and Garcia alleged no facts to show that he was in danger of being arrested in the future and detained in a similar manner. *See City of Los Angeles v. Lyons,* 461 U.S. 95, 101–02, 103 S.Ct. 1660, 1664–65, 75 L.Ed.2d 675 (1983) (no standing to seek injunction if not in danger of being arrested and subjected to future mistreatment). Thus, the district court correctly dismissed O'Malley.

### B. The *Gerstein* Claims

■ Garcia's only claims for relief against defendants Sheahan and English relate to his inability to be present at the probable cause hearing held the day after Officer Gall arrested him. Garcia also named the City of Chicago and Cook County in those claims.[4] The Fourth Amendment, however, does not require that probable cause hearings be adversarial in nature, *Gerstein v. Pugh,* 420 U.S. 103, 121–22, 95 S.Ct. 854, 866–67, 43 L.Ed.2d 54 (1975); the Fourth Amendment allows the issuance of warrants in the absence of the arrestees, and its scope does not expand for probable cause determinations that take place after arrests. *Id.* at 120, 95 S.Ct. at 866; *see also McLaughlin v. County of Riverside,* 888 F.2d 1276 (9th Cir.1989) ("Those arrested with a warrant have not attended the probable cause determination made before issuance of the warrant. We perceive no basis for hold-

---

**4.** Garcia failed to specify in his notice of appeal that he was appealing the dismissal of the *Gerstein* claims against the City of Chicago as Federal Rule of Appellate Procedure 3(c) requires. That failure is jurisdictional, *see Torres v. Oakland Scavenger Co.,* 487 U.S. 312, 108 S.Ct. 2405, 101 L.Ed.2d 285 (1988), and we therefore cannot consider the appeal of the *Gerstein* claims as

applied to the City of Chicago. Additionally, Garcia expressly waived his right to raise any *Gerstein* claims against the City in his settlement agreement with Officer Gall and the City. The importance of these points, however, is minimized by the fact that, as the district court explained, Garcia's *Gerstein* claims lacked any merit.

ing that the fourth amendment grants warrantless arrestees such a right."). The record in this case demonstrates that Garcia, who never contended that he was physically capable of leaving the hospital, received a timely and constitutionally sufficient probable cause hearing in which an attorney represented Garcia without objection by Garcia. The district court therefore correctly dismissed the City of Chicago, Cook County, Sheahan, and English notwithstanding Garcia's inability to attend the hearing.

## C. The Second Amended Complaint

■ We must ask whether the district court abused its discretion when it denied Garcia leave to amend his complaint. *See Bower v. Jones*, 978 F.2d 1004, 1008 (7th Cir.1992). A district court does not abuse its discretion in denying leave to amend if the proposed repleading would be futile, *DeSalle v. Wright*, 969 F.2d 273, 278 (7th Cir.1992), and futile repleadings include restating the same facts using different language, *Wakeen v. Hoffman House, Inc.*, 724 F.2d 1238, 1244 (7th Cir.1983), reasserting claims previously determined, *id.*, failing to state a valid theory of liability, *Verhein v. South Bend Lathe, Inc.*, 598 F.2d 1061, 1063 (7th Cir.1979), and the inability to survive a motion to dismiss, *Glick v. Koenig*, 766 F.2d 265, 268 (7th Cir. 1985).

Garcia's second amended complaint reiterated his excessive force and Fourth Amendment claims against the City of Chicago and Officer Gall, and restated the *Gerstein* claims the district court had dismissed previously. The district court reasoned that because the second amended complaint stated no new claims, it was futile, and the district court therefore denied Garcia leave to amend his complaint. That decision, far from being an abuse of discretion, stood on firm legal ground.

## D. The Fourth and Fourteenth Amendment Claims

■ Garcia argues that the Fourth Amendment requires that police officers perform tests on substances believed to be illegal drugs immediately at a police station, rather than ten to twenty days after arrests at a crime lab, as the City of Chicago did after Garcia's arrest. Nevertheless, Garcia concedes that finding a white powder in a person's possession provides probable cause to arrest that person for possession of cocaine. *See United States v. Potter*, 895 F.2d 1231, 1234 & n. 1 (9th Cir.), *cert. denied*, 497 U.S. 1008, 110 S.Ct. 3247, 111 L.Ed.2d 757 (1990). As we consistently have held, "once police officers have discovered sufficient facts to establish probable cause, they have no constitutional obligation to conduct any further investigation in the hopes of uncovering potentially exculpatory evidence." *Schertz v. Waupaca County*, 875 F.2d 578, 583 (7th Cir.1989).

Garcia has suggested that the cobalt thiocyanate spot test is a superior, quicker means of determining whether a substance is cocaine. Perhaps he is correct, but what is wise practice and what is constitutionally compulsory are two very different concepts. *See Gramenos v. Jewel Cos.*, 797 F.2d 432, 442 (7th Cir.1986), *cert. denied*, 481 U.S. 1028, 107 S.Ct. 1952, 95 L.Ed.2d 525 (1987). The City of Chicago is entitled to weigh the costs and benefits of available testing options and make its choice, and federal courts should be reluctant to second-guess such policy decisions. Garcia has articulated no reason why a twenty day period of time for testing a substance believed upon probable cause to be cocaine is constitutionally deficient, nor can we fathom why it would be.[5]

■ Garcia also contends that the City held him in custody in violation of the Fourth and Fourteenth Amendments after it discovered that the powder in question was not a controlled substance.[6] Garcia, however, was

---

**5.** If Garcia believed the City was proceeding too slowly, he could have tested the substance himself by exercising his right to investigate. *See U.S. Const.* amend VI (Compulsory Process Clause); Ill.S.Ct.R. 412(a)(v).

**6.** Because the seizure of a person ends after the *Gerstein* hearing, the Due Process Clause of the Fourteenth Amendment is the only applicable constitutional provision. *See Wilkins v. May*, 872 F.2d 190, 193 (7th Cir.1989), *cert. denied*, 493 U.S. 1026, 110 S.Ct. 733, 107 L.Ed.2d 752 (1990). The recent Supreme Court decision of

on probation before his arrest by Officer Gall, his probation was revoked subsequent to the arrest. The City legitimately held Garcia in custody until April 12, when the court reinstated Garcia's probation. *See Thompson v. Duke*, 882 F.2d 1180, 1187 (7th Cir.1989) ("We note that dismissal of the charges underlying a parole violation warrant has been found of no consequence in the state's determination of a parole violation.") (citations omitted). Although undue delay in making a decision regarding reinstatement of probation might in some instances rise to the level of a deprivation of constitutionally guaranteed rights, *United States v. Scott*, 850 F.2d 316, 319 (7th Cir.1988),[7] Garcia did not make any arguments regarding reinstatement of his probation.

■ Instead, Garcia cites *BeVier v. Hucal*, 806 F.2d 123, 128 (7th Cir.1986), *Davis v. Kirby*, 755 F.Supp. 199, 201 (N.D.Ill.1990), and *People v. Quarles*, 88 Ill.App.3d 340, 43 Ill.Dec. 497, 410 N.E.2d 497 (1980), for the proposition that the City was constitutionally obligated to release him as soon as it discovered that Garcia was not in possession of a controlled substance, but none of those cases hold as Garcia indicates. *BeVier, Davis*, and *Quarles* all involved the dissipation of probable cause *before* a judicial determination of probable cause (and in *BeVier* and *Davis*, probable cause never existed at all). Once a judge makes a probable cause determination at a *Gerstein* hearing, as happened here, that determination is sufficient to bring the case to trial. *Gerstein*, 420 U.S. at 119–24, 95 S.Ct. at 865–68.

■ What happens when the prosecutor discovers exculpatory evidence after a probable cause determination at a *Gerstein* hearing? Not all exculpatory evidence irrefutably proves the defendant's innocence. The decision to move for *nolle prosequi* is a matter of prosecutorial discretion, and the prosecutor can proceed to trial if the prosecutor believes doing so is warranted. In this case, in fact, the prosecutor *did* dismiss the case well before trial, at the preliminary hearing—Garcia just contends that the delay from March 26 until April 10, the date the court set for his preliminary hearing, was too lengthy. The Due Process Clause, however, does not compel prosecutors to dismiss its cases before trial based on exculpatory evidence in its possession, much less compel them to do so within fifteen days. *See Albright v. Oliver*, —— U.S. ——, ——, 114 S.Ct. 807, 813, 127 L.Ed.2d 114 (1994) (quoting *Gerstein* for the proposition that the accused is not "entitled to judicial oversight or review of the decision to prosecute.").

Of course, if the prosecutor fails to deliver exculpatory evidence to the defendant before trial, it may run afoul of *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). If the trial is too long in coming, a Sixth Amendment speedy trial problem may arise. *See Doggett v. United States*, —— U.S. ——, —— ——, 112 S.Ct. 2686, 2692–94, 120 L.Ed.2d 520 (1992). Garcia, however, raises neither a *Brady* nor a Speedy Trial claim (nor do either problems exist here). The prosecutor, confronted with strong exculpatory evidence, properly decided to move for a *nolle prosequi* at the preliminary hearing rather than wait until trial. Garcia's

*Albright v. Oliver*, —— U.S. ——, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994), casts considerable doubt on the applicability of substantive due process as well. *See id.* —— U.S. at ——, 114 S.Ct. at 814 (Scalia, J., concurring) ("But here there was no criminal sentence (the indictment was dismissed), and so the only deprivation of life, liberty or property, if any, consisted of petitioner's pretrial arrest. I think it unlikely that the procedures constitutionally "due," with regard to an arrest, consist of anything more than what the Fourth Amendment specifies.").

7. In *Scott*, this court adopted a three factor test to determine whether a revocation hearing was

not reasonably prompt: "the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." *Scott*, 850 F.2d at 319, quoting *Barker v. Wingo*, 407 U.S. 514, 530, 92 S.Ct. 2182, 2191–92, 33 L.Ed.2d 101 (1972). Here, Garcia was not prejudiced by the delay, as his probation was reinstated in less than three weeks. *See Scott*, 850 F.2d at 321 (13 month delay not prejudicial when no evidence of how delay impaired defense at revocation hearing exists). Additionally, Garcia never asserted his right to a reasonably prompt revocation hearing. Our holding that Garcia properly was held in custody until after the preliminary hearing is well within *Scott*.

right to due process of law was satisfied.[8]

For the foregoing reasons, the judgment of the district court is AFFIRMED.

CUDAHY, Circuit Judge, concurring in part and dissenting in part.

I agree with the majority's able analysis and disposition of all the issues save one. I have difficulty, however, with the approach to the City's delayed drug testing and egregiously slow application of the negative test results. Garcia alleges that the City's policy caused him to be detained for the 11 days it took the white powder to be tested for drugs, and for 15 more days after the tests came back negative. Because I think that such a policy may implicate Garcia's Fourteenth Amendment due process rights, I would not dismiss this claim at the early stage of a 12(b)(6) motion. Whether the City policy actually caused Garcia's detention and whether it is reasonable are issues requiring further proceedings. The waters are muddied somewhat by the fact that Garcia was on probation for an auto theft offense at the time of his arrest. At the *Gerstein* hearing, the state's attorney was granted leave to file a violation of probation report, although, contrary to the majority's assumption, Garcia's probation was never actually revoked.[1] But neither the parties, the district court nor the majority have scrutinized this case through the probation lens. Significantly, the City never contended that Garcia's detention was based on his alleged probation violation, nor does it argue that either his liberty interest or his due process rights are limited due to his probation status. Nor does the majority's analysis hinge on Garcia's status as a probationer. Because the case has proceeded along these lines, I find it useful to examine first Garcia's detention claim without reference to his probation status.

It is significant that the district court did not dismiss Garcia's due process claim for failure to allege a constitutional violation. Instead, the court found that "conduct that results in unreasonable, unnecessary and unjustified delays in processing and releasing arrestees violates the Constitution if done intentionally or with deliberate indifference to the rights of arrestees." And the district court concluded that for purposes of a motion to dismiss, it must be presumed that 10 to 20 days is an unreasonable testing delay. But the court eventually dismissed the claim for failing to allege municipal liability with heightened specificity, an approach since invalidated by *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, —— U.S. ——, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993). I believe, however, that the district court was correct in its analysis of the problem—preliminary to its consideration of the pleading question.

Garcia's objection to the City's policy is essentially a challenge to extended pre-trial detention. The majority reasons that after a *Gerstein* hearing the speedy trial guarantee is the only limitation on subsequent prolonged pre-trial detention. This is cold comfort—the Constitution permits a trial months or even years after an arrest. *See, e.g., Barker v. Wingo*, 407 U.S. 514, 536, 92 S.Ct. 2182, 2194–95, 33 L.Ed.2d 101 (1972) (delay of over four years is constitutional). Moreover, I am skeptical about the majority's implicit conclusion that a *Gerstein* hearing

---

8. We are somewhat puzzled as to why Garcia was not released until April 15, 1991, given that the prosecutor entered a *nolle prosequi* on April 10, and that Garcia's probation was reinstated on April 12. Perhaps this was due in part to the weekend that fell on April 13–14, 1991, or to administrative inefficiencies. Obviously, holding a person in jail for several days who does not belong there might rise to the level of a constitutional violation. Nevertheless, nothing in the record suggests that Garcia's attorney ever brought Garcia's continued confinement to the attention of the court, nor is there any indication that Garcia himself ever made an effort to contact the court, his attorney, or an administrator in the Cook County Jail.

1. Probation may be revoked only after a full hearing that includes notice of the alleged violation, an opportunity to appear and present evidence, a conditional right to confront adverse witnesses and a written report. *Gagnon v. Scarpelli*, 411 U.S. 778, 786, 93 S.Ct. 1756, 1761–62, 36 L.Ed.2d 656 (1973); *see also* 730 ILCS 5/5–6–4 (revocation hearing must occur within a reasonable time). There is no evidence that Garcia received such a hearing. At the April 12 hearing after the prosecutors nolle prossed the charges against Garcia, the court restored (as opposed to reinstated) probation, noting that it had never been terminated.

bestows a constitutional blessing on *all* subsequent prolonged detention.

In *Baker v. McCollan,* 443 U.S. 137, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979), the Supreme Court suggested that prolonged pre-trial detention, pursuant to a valid warrant and a judicial determination of probable cause, may violate due process. *Id.* at 145, 99 S.Ct. at 2694–95. *Baker* found no constitutional violation where the plaintiff was arrested and detained for three days over a holiday before the authorities realized they had arrested the wrong man. Although the speedy trial guarantee ensured that someone could not be detained indefinitely, the court observed that continued detention "in the face of repeated protests of innocence will after the lapse of a certain amount of time deprive the accused of 'liberty ... without due process of law.' " *Id.* However, the Court was "quite sure that a detention of three days over a New Year's weekend does not and could not amount to such a deprivation." *Id.*

On the other hand, *Baker* also rejected a requirement that law enforcement officials exercise "due diligence" to determine whether the person detained is in fact innocent, holding that officials need not "investigate independently every claim of innocence." 443 U.S. at 146, 99 S.Ct. at 2695; *see also Thompson v. Duke,* 882 F.2d 1180, 1186 (7th Cir.1989), *cert. denied* 495 U.S. 929, 110 S.Ct. 2167, 109 L.Ed.2d 496 (1990); *Schertz v. Waupaca County,* 875 F.2d 578, 583 (7th Cir.1989). The government here, of course, argues that *Baker* forecloses any challenge to the City's policy of delayed drug testing or of delayed reaction to the results of the drug tests.

But *Baker,* by its own admission, is not absolute. Since *Baker,* courts have found that prolonged pre-trial detention without any investigation can constitute a deprivation of liberty without due process. In *Johnson v. City of Chicago,* 711 F.Supp. 1465 (N.D.Ill. 1989), for example, the court found that a 6–day detention violated due process when the police did not take "even minimal steps" to evaluate the detainee's claims of innocence. *Id.* at 1470. Significantly, Johnson was arrested pursuant to a valid warrant (unfortunately intended for another Johnson, an Attica escapee) and brought before a judge for a first appearance; nonetheless, the court found that due process required more. *Id.* Similarly, in *Patton v. Przybylski,* 822 F.2d 697 (7th Cir.1987), "an innocent person was allowed to languish in jail for almost a week; and to arrest a person over his vigorous protest that he is the wrong man ... and keep him in jail for this period without either investigating the case or bringing him before a magistrate raises serious constitutional questions, under the ... due process clause." *Id.* at 700–01. In *Coleman v. Frantz,* 754 F.2d 719 (7th Cir.1985), where the plaintiff was detained pursuant to a valid warrant for 18 days despite his protests of innocence, we held that *"Baker* supports, if not requires, our conclusion that plaintiff's 18–day. detention was a violation of liberty without due process of law." *Id.* at 724. *See also Brown v. Patterson,* 823 F.2d 167, 169 (7th Cir.), *cert. denied* 484 U.S. 855, 108 S.Ct. 162, 98 L.Ed.2d 117 (1987) ("prolonged confinement of an arrested person without a hearing to determine whether he is the person named in the warrant would be a deprivation of liberty without due process of law and thus violate the Fourteenth Amendment").[2]

---

**2.** These cases all rely, to some degree, on the fact that the detainees were not brought before a magistrate to present their claims of innocence. But although Garcia received a *Gerstein* hearing, it is by no means clear that this alone renders these cases inapplicable. A *Gerstein* hearing *follows* a warrantless arrest, and essentially replaces the probable cause determination that otherwise precedes issuance of an arrest warrant, *Gerstein,* 420 U.S. at 120, 95 S.Ct. at 866; hence adversary safeguards, such as the right to be present at the hearing, are absent. *McLaughlin v. County of Riverside,* 888 F.2d 1276, 1279 (9th Cir.1989), *vacated and remanded on other grounds,* 500 U.S. 44, 111 S.Ct. 1661, 114

L.Ed.2d 49 (1991). But all defendants, whether arrested pursuant to a warrant or not, are usually afforded an opportunity under state law (e.g. 725 ILCS 5/109–1) or under Fed.R.Crim.P. 5(a) to be presented to a magistrate soon after arrest. Since the defendants in *Coleman* and *Patton* were arrested pursuant to warrants, it is, in part, the absence of this "first appearance" that rendered their detention unconstitutional. *Coleman,* 754 F.2d at 723–24; *Patton,* 822 F.2d at 701. But I am skeptical whether the *Coleman* or *Patton* courts would have considered due process satisfied if the defendants in those cases had not themselves been brought to court nor been repre-

*Baker* does not, then, preclude us from finding that the constitutionality of pre-trial detention may be questioned if the authorities deliberately ignore *all* indications that the detainee is innocent. We should not, therefore, hold as a matter of law that the City's failure to determine whether a suspect was carrying *any* drugs for 11 days cannot implicate due process.

But whatever haziness obscures the exact contours of a duty to investigate burns off once the authorities *know* that they have no basis for detention. *Baker* only permitted pre-trial detention after a valid arrest pursuant to a valid warrant *"until* it was discovered that [the detainee] was not the person sought." *Powe v. City of Chicago,* 664 F.2d 639, 651–52 (7th Cir.1981) (emphasis in original). *Baker* and its progeny did not involve "actual knowledge of the defendant's innocence, but rather the failure to take affirmative steps to determine his innocence." *Gay v. Wall,* 761 F.2d 175, 178 (4th Cir.1985); *see also Sanders v. English,* 950 F.2d 1152, 1162 (5th Cir.1992). Here, after March 26, the City had tested the white powder and knew that it contained no drugs. Absent *any* other basis for suspicion—and at this stage we must assume there was none other than probation violation concerns—Garcia's extended detention at least presumptively violates the due process clause. *See e.g. Powe,* 664 F.2d at 651–52; *Gay v. Wall,* 761 F.2d at 179; *Pennington v. Hobson,* 719 F.Supp. 760 (S.D.Ind.1989). As far as we can tell, the balance of incriminating evidence did not merely shift; there simply was no incriminating evidence. The situation was exactly as if the authorities had found that they had arrested the wrong person. *See, e.g., Patton,* 822 F.2d at 700–01; *Powe,* 664 F.2d at 651. In those circumstances—when the law enforcement officers know there is *no* hint of wrongdoing—continued pre-trial detention cannot be justified.

Richmond, Indiana had a drug testing policy that resulted in a similar prolonged detention that the district court found unconstitu-

tional in *Pennington v. Hobson,* 719 F.Supp. at 770–72. Pennington was found with a packet of white powder, which a field test indicated was cocaine. A state court determined there was probable cause to detain Pennington pending confirmation of the field test. Confirmation took two months since the police officer responsible for transporting drugs to the state lab took only one trip each month and had just returned from that month's trip. The white powder turned out to be aspirin after all, but Pennington was kept in jail for another month after the test results came back. *Id.* at 763–64. Like Garcia, Pennington brought a § 1983 claim alleging that the testing policy resulted in an unlawful detention. The district court concluded that although the police were not required to confirm their positive field test sooner than they did, the continued detention after the tests proved negative violated the Fourteenth Amendment. *Id.* at 771. The court denied the police officers' claim of qualified immunity, finding that "reasonable police officers [were] on notice that the Constitution proscribed intentional deprivations of liberty in the face of clearly exculpatory evidence." *Id.*

The Fifth Circuit also recently concluded that detention without investigation could be unconstitutional. *Sanders v. English,* 950 F.2d 1152 (5th Cir.1992). Sanders was arrested pursuant to a valid warrant and detained for about 50 days. The police officer did not follow up on the significant leads suggesting that he was innocent. *Id.* at 1156–57. The Fifth Circuit held that Sanders' § 1983 claim alleging a due process violation survived dismissal since "a fact-finder reasonably could conclude that Lt. McCoy deliberately looked the other way in the face of exonerative evidence indicating that he had arrested the wrong man.... *Baker* imposes no impediment to Sanders' claim because the thrust of his contention is not that Lt. McCoy failed to take affirmative steps to investigate Sanders' innocence, but rather, that Lt. McCoy failed to release him even

sented by counsel who knew about their claim of mistake. The results might have been different if a judge had only read the police affidavits and ruled that the defendants could remain in detention. The latter is, essentially, the process that

Garcia received. While this process comports with the requirements of *Gerstein,* it is far from clear that it is the equivalent of the hearing we have required as a prerequisite to extended pre-trial detention in *Coleman* or *Patton.*

after he knew (or should have known) that Sanders had been misidentified." *Id.* at 1162.

In the Fourth Amendment context, if the evidence that forms probable cause for a warrantless arrest dissipates before the arrestee is brought before a judge, continued detention is unconstitutional. *Sivard v. Pulaski County,* 959 F.2d 662 (7th Cir.1992), *remanded and affirmed on other grounds,* 17 F.3d 185 (7th Cir.1994), held that a plaintiff had stated a due process claim when the "sheriff ... knew of his wrongful detention and continued to detain him in spite of that knowledge." *Id.* at 668. The same principle should apply in the due process context when the *sole basis* for detention has evaporated. Of course, it remains to be seen in the course of developing the facts to what extent the City's policy contributed to Garcia's continued detention. But since his detention presumptively violated his due process rights, I would not dismiss the matter at this stage.

Garcia has also challenged the City's policy as objectively unreasonable under the Fourth Amendment. As the majority noted, this circuit has a line of cases stating that after a Gerstein hearing, the Fourth Amendment ceases to apply and due process furnishes the only standard. *Wilkins v. May,* 872 F.2d 190 (7th Cir.1989), *cert. denied,* 493 U.S. 1026, 110 S.Ct. 733, 107 L.Ed.2d 752 (1990); *Villanova v. Abrams,* 972 F.2d 792, 797 (7th Cir.1992). Although I agree that these cases preclude consideration of Garcia's Fourth Amendment claim, the Supreme Court's recent decision in *Albright v. Oliver,* —— U.S. ——, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994), potentially blurs the bright line we have drawn. Albright was arrested for selling look-alike drugs. He was bound over for trial at a preliminary hearing (although not imprisoned), and the charges against him were eventually dismissed. *Id.* —— U.S. at ——, 114 S.Ct. at 810. The court was presented with the narrow question whether Albright could maintain a § 1983 claim for malicious prosecution on substantive due process grounds. *Id.* —— U.S. at ——, 114 S.Ct. at 812. A plurality of the court held that there is no substantive due process right to be free from malicious prosecution. Rather,

any such claim should be brought under the Fourth Amendment (although the court noted that Albright had not challenged his treatment on procedural due process grounds either). *Id.* Justice Ginsburg, who joined the plurality, wrote separately to explain her reasons for considering the case under the Fourth Amendment: "Albright may have feared that courts would narrowly define the Fourth Amendment's key term 'seizure' so as to deny full scope to his claim. In particular, he may have anticipated a holding that the 'seizure' of his person ended when he was released from custody on bond.... Such a concern might have stemmed from Seventh Circuit precedent set before *Graham v. Connor,* 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). *See Wilkins v. May,* 872 F.2d 190, 195 (1989) (substantive due process 'shock the conscience' standard, not the Fourth Amendment, applies to brutal 'post-arrest pre-charge' interrogation)." *Id.* —— U.S. at —— & n. 2, 114 S.Ct. at 815 & n. 2. The Ginsburg opinion further observes that the Fourth Amendment continues to apply even after an initial bond hearing and release on custody, since the defendant remains " 'seized' for trial, so long as he is bound to appear in court and answer the state's charges." *Id.* —— U.S. at ——, 114 S.Ct. at 816.

Since, however, the court's statements about the applicability of the Fourth Amendment are essentially only dicta in an otherwise narrow substantive due process case, I have difficulty concluding that they revive Garcia's Fourth Amendment claim. In any event, it probably makes little difference here, since the Fourth Amendment's prohibition against "unreasonable" seizures is coextensive with the Fourteenth Amendment's prohibition against deprivations of liberty without due process. *Id.* —— U.S. at ——, n. 24, 114 S.Ct. at 829, n. 24 (Blackmun, J., dissenting).

No party has suggested that Garcia's claim with respect to pre-trial detention has been affected by his status as a probationer. Nor did the district court consider this germane to the issues presented here. I therefore do not think the issue is properly before us. Even if it were, I do not think that Garcia's probation status would significantly affect the analysis of this case. Once the essential

basis for probation revocation—a probation violation—had disappeared, there was no justification for denying even a probationer's minimal liberty interest.[3] *See, e.g., Douglas v. Buder,* 412 U.S. 430, 432, 93 S.Ct. 2199, 2200–01, 37 L.Ed.2d 52 (1973) ("we conclude that the finding that petitioner had violated the conditions of his probation ... was so totally devoid of evidentiary support as to be invalid under the Due Process Clause of the Fourteenth Amendment"); *Gagnon v. Scarpelli,* 411 U.S. at 781–82, 93 S.Ct. at 1759–60 (due process applies to probation revocation).

On a final note, the majority observes that Garcia was detained for an additional five days after the charges against him were nolle prossed, or three days after probation had been restored. Inexplicably, Garcia does not appear to challenge this period of detention. I mention this fact only to underscore my view that such arbitrary detention—when a person is neither suspected, arrested, charged nor convicted of any crime or wrongdoing—is clearly unconstitutional.

---

**3.** Of course, a probation violation may exist where no crime has been committed. *See, e.g., Thompson v. Duke,* 882 F.2d at 1187 (three day delay in conducting parole revocation hearing was constitutional when there were reasons to suspect parole had been violated). We do not know, again in great part because the probation revocation question has never been presented in this case, whether after the drug testing there remained any basis on which to conclude that Garcia had violated a condition of his probation. We also do not have the benefit of the district court's consideration of the factors set forth in *United States v. Scott,* 850 F.2d 316, 319 (7th Cir.1988).